NOT DESIGNATED FOR PUBLICATION

No. 117,929

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of E.R.S., C.W.S. II, and F.A.S.,
Minor Children.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; J. PATRICK WALTERS, judge. Opinion filed February 9, 2018. Affirmed.

*Lucy C. Hesse*, of Wichita, for appellant natural father.

*Julie A. Koon*, assistant district attorney, and *Marc Bennett,* district attorney, for appellee.

Before LEBEN, P.J., HILL, J., and WALKER, S.J.

PER CURIAM: Father appeals from the district court's order terminating parental rights to his three children. Parental rights may be terminated only under circumstances set out by statute and only when clear and convincing evidence supports termination.

- Father claims on appeal that the State's evidence was insufficient to terminate his parental rights. But termination is authorized when a parent has been imprisoned for a felony, K.S.A. 2016 Supp. 38-2269(b)(5); when reasonable efforts by public and private agencies to get the family back together have failed, K.S.A. 2016 Supp. 38-2269(b)(7); when a parent has shown a lack of effort to adjust his or her circumstances, conduct, or conditions to meet his children's needs, K.S.A. 2016 Supp. 38-2269(b)(8); and when a parent fails to carry out a court-approved plan to reintegrate the children into the parental home, K.S.A. 2016 Supp. 38-2269(c)(3).

Sufficient evidence supported termination under these provisions: When the district court terminated Father's parental rights, he was in prison on a felony conviction, and he had been in jail or prison for the majority of the lives of two of his three children.

- Father had never met his youngest child and hadn't made any effort to maintain a relationship with his children. Nor did he know where his children lived or attended school.

- Father didn't participate in the plan prepared by a state-agency contractor to reintegrate him with the children and didn't complete the plan's drug-testing requirements.

We recognize that termination of parental rights is a serious matter. We have reviewed the entire record in this case, and we find clear and convincing evidence to support the district court's findings that Father was unfit as a parent and that the conditions leading to that finding were unlikely to change in the foreseeable future. We therefore affirm the district court's judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Three children—daughter E.R.S., son C.W.S., and daughter F.A.S.—lived with their mother (Mother) in Park City, Kansas, a suburb of Wichita. On October 23, 2015, all three children were taken into police protective custody after E.R.S. told her school teacher that Mother had held a knife to E.R.S.'s throat. At the time, E.R.S. was seven, C.W.S. was five, and F.A.S. was one. After the children were taken into police custody, the State filed a petition requesting the district court to determine that the children were in need of care.

At the time, Mother and Father didn't live together. Mother was addicted to drugs, and law-enforcement officers suspected that the house where Mother lived with her

2

children was a "methamphetamine house." Father also lived in Sedgwick County and was on probation. The children hadn't seen or spoken with Father since March 2015. Both parents had long histories of contact with law-enforcement officers—including instances of domestic violence that took place in front of the children.

The court held a temporary custody hearing on October 28, 2015. Mother appeared at the hearing. The State attempted to notify Father of the proceedings, but he never responded to the State's messages. Father didn't appear at the hearing and the court held him in default.

Another hearing was held on December 18, 2015. Mother and Father both appeared; they entered no-contest responses to the allegations in the State's petition. The court found that E.R.S., C.W.S., and F.A.S were children in need of care and placed the children in custody of the Department for Children and Families. The court ordered Mother and Father to work with St. Francis Community Services—a non-profit agency that contracts with the State of Kansas to provide family-reintegration services in cases like this one. Both Mother and Father were given reintegration tasks and requirements that included finding and maintaining full-time employment and appropriate housing, completing parenting classes, not using drugs, and complying with drug-testing requirements.

The children remained in State custody through a series of permanency hearings that took place in March, June, July, and October 2016. At the March hearing, the court ordered that the children and Father not have visitations. Father appeared at the June and July hearings, but he later indicated to his caseworker that he wasn't sure if he wanted to work on the reintegration plan. Mother consistently tested positive for drugs throughout the proceedings.

3

The State filed a motion to terminate both Father's and Mother's parental rights in December 2016. The motion specifically discussed Father's general lack of participation in the case plan, his failure to take advantage of the reintegration services available to him, his failure to comply with drug-testing requirements, and the recent felony charge that was pending against him.

Termination proceedings took place on April 3, 2017. By this time, E.R.S. was eight, C.W.S. was seven, and F.A.S. was two. Mother voluntarily gave up her parental rights. Father—who was incarcerated at the time of the proceedings—chose to go to trial.

Father was the only person who testified. He said that he had completed a parenting class in jail, but admitted that he had only attended one reintegration meeting since the beginning of proceedings. Father also acknowledged that he hadn't seen his children since they were taken into State custody, didn't know where his children lived, and didn't know where any of them attended school.

The court terminated Father's parental rights. It concluded that Father hadn't worked on his reintegration plan with St. Francis, hadn't put forth effort to adjust his circumstances so his children's needs could be met, and failed to carry out the State's plan for reintegration. The court also found that Father was incarcerated and that his children had been in State custody for more than a year.

The court concluded that Father's circumstances weren't likely to change and that he failed to demonstrate to the court that he could be able to provide his children with the stability they needed. The court said the children's well-being was its primary consideration, and the court ultimately found that their needs would be best served by terminating Father's parental rights.

Father has appealed to our court.

ANALYSIS

A district court may terminate parental rights only if it makes three findings: (1) the parent is unfit and unable to care for a child; (2) the conduct or condition that makes the parent unfit is not likely to change in the foreseeable future; and (3) terminating the parental rights is in the best interests of the children. K.S.A. 2016 Supp. 38-2269(a), (g)(1); *In re D.H.*, 54 Kan. App. 2d 486, 488, 401 P.3d 163 (2017).

The first two findings are factual conclusions that must be supported by clear and convincing evidence. See *In re B.D.-Y.*, 286 Kan. 686, 705, 187 P.3d 594 (2008); *In re D.H.*, 54 Kan. App. 2d at 488. Evidence is clear and convincing if, after reviewing the evidence in a light most favorable to the State (since the district court, which makes the fact-findings, already ruled in favor of the State), a rational fact-finder could find the facts to be highly probable. *In re D.H.*, 54 Kan. App. 2d at 489.

The third factor—that terminating the parent's rights is in the children's best interests—is a judgment call that we review only for an abuse of discretion. A district court abuses its discretion when no reasonable person would agree with its decision or when the decision is based on a legal or factual error. *In re R.S.*, 50 Kan. App. 2d 1105, Syl. ¶ 2, 336 P.3d 903 (2014).

In this appeal, Father challenges the factual basis for the court's ruling. He argues that the district court lacked sufficient evidence to support its conclusions that he was presently unfit to parent his children and that his unfitness was not likely to change in the foreseeable future. So we must consider the factual support for those conclusions.

As for unfitness, the Kansas Legislature has provided a statutory list of several factors that may show parental unfitness in a given case. See K.S.A. 2016 Supp. 38-2269. Although courts should consider all applicable factors when making a decision

concerning parental rights, a single factor—when supported by clear and convincing evidence—can support termination. K.S.A. 2016 Supp. 38-2269(f); *In re R.S.*, 50 Kan. App. 2d at 1117.

Here, the court's decision to terminate Father's parental rights was based on four of the statutory factors from K.S.A. 2016 Supp. 38-2269: (1) Father was incarcerated for his felony-weapons conviction (subsection [b][5]); (2) State efforts to reintegrate and rehabilitate the family had failed (subsection [b][7]); (3) Father had failed to put forth any effort to change his circumstances, conduct, or conditions so he could parent his children (subsection [b][8]); and (4) Father had failed to carry out the State's reintegration plan (subsection [c][3]).

Father's felony conviction and imprisonment are indisputable: Father was serving a 15-month sentence for a felony weapons conviction at the time of the termination trial. In addition to his felony weapons conviction, Father has also been convicted multiple times each for battery, minor in possession of alcohol, assault, and possession of drug paraphernalia. His criminal record also includes convictions for criminal damage to property, burglary, domestic battery, criminal threat, and unlawful use of weapons.

Father's convictions and incarcerations alone would be sufficient to support the court's finding that Father was unfit. Since his first child was born in 2008, Father had at least 15 convictions. He had been in jail or prison for the majority of the lives of two of his three children, and he was incarcerated when his son, C.W.S., was born.

But there was also evidence supporting the district court's conclusion that Father was unfit under other statutory factors. Although Father argues the State failed to make reasonable efforts towards reintegration, State agencies or contractors, including St. Francis, were available to help Father improve and stabilize his circumstances so that he could take care of his children. The State proposed a detailed plan for reintegration, but Father

6

admittedly only showed up for one of the reintegration meetings with his caseworker. And although he was physically present at that meeting, the caseworker indicated that Father didn't participate. This evidence supported the court's findings that the State's efforts to rehabilitate the family failed (K.S.A. 2016 Supp. 38-2269(b)[7]), that Father had failed to carry out a reasonable court-approved reintegration plan (K.S.A. 2016 Supp. 38-2269(c)[3]), and that Father had failed to put forth effort to change his conduct or circumstances to meet the children's needs (K.S.A. 2016 Supp. 38-2269[b][8]).

Father attempts to rationalize his noncompliance with the reintegration plan by noting that he was incarcerated during most the time the termination case was pending, a circumstance he considers beyond his control. It's true that Father spent many months in jail and prison, making it practically impossible to secure a job or place to live after his release. But Father admits that his failure to comply with the law and with court orders caused the inconvenient circumstances created by his most recent incarceration—he acknowledged that completing a substance-abuse evaluation likely would have kept him out of prison.

Further, Father admits that he failed to make any attempt to connect with his children, that he didn't comply with the reintegration plan during the periods of time that he wasn't incarcerated, and that he never provided a urine sample, as required by the reintegration plan. After a scheduled visit with his children was cancelled, Father didn't try to reschedule the appointment. At trial, Father admitted that he had made no effort to communicate with his children while in prison—and he didn't even know where the children were living.

This evidence met the clear-and-convincing-evidence standard that the facts be highly probable. Father had at best played a limited role in the children's lives. He hadn't met his youngest child. New convictions are routinely added to his criminal record. Father hadn't maintained a steady income. Nor had he maintained a consistent place to live. While in jail, Father hadn't put forth any effort to communicate with his children. He

7

hadn't seen his children in more than two years. And during the rare times that he wasn't incarcerated, Father failed to comply with the case plan.

Likewise, the State presented clear and convincing evidence that Father's behavior and conditions weren't likely to change in the foreseeable future. See K.S.A. 2016 Supp. 38-2269(a). At the time of trial, Father still had 5 months of his 15-month sentence left to serve. After his release from prison, Father still had to serve up to seven months in a work-release program. But his children wouldn't be permitted to be with him while in prison or on work release. So as of the trial, Father wouldn't have been able to live with his children for more than a year.

Even if a year doesn't seem long for an adult, a court must consider "child time" when making a decision about whether a person will become fit to parent in the foreseeable future. A year is a long time for a child, and asking Father's children to wait more than a year before they could have even the possibility of stability is a lot to ask. See *In re M.B.*, 39 Kan. App. 2d 31, 45, 176 P.3d 977 (2008); see also *In re G.A.Y.*, No. 109,605, 2013 WL 5507639, at *1 (Kan. App. 2013) (unpublished opinion) (discussing how "'child time'" is different from "'adult time'" because "a year . . . reflects a much longer portion of a minor's life than an adult's"). In addition, of course, Father had given the court no reason to believe that he would be ready to take responsibility for the children even when he was through with the work-release program.

Father's challenge on appeal is limited to the claim that the evidence wasn't sufficient to show that he was unfit or that his unfitness was unlikely to change in the foreseeable future. He did not claim in his appellate brief that the district court abused its discretion when it concluded that terminating Father's parental rights was in the best interests of his children. See *In re R.S.*, 50 Kan. App. 2d at 1106; see also *In re A.M.*, No. 116,986, 2017 WL 3001353, at *4 (Kan. App. 2017) (unpublished opinion). Even if he had, we could not find an abuse of discretion in the district court's determination. Given

8

the evidence, a reasonable person could easily agree with the court's conclusion. Although Father expressed his love for his children, he didn't have a substantial relationship with them and hadn't shown that he'd be ready to provide care and support for them in the future.

We close our opinion by noting some comments we made in another case, which apply here as well:

> "Cases like this are difficult ones. A parent may be labeled 'unfit' under the law even though he or she loves the child and wants to do the right thing, which may be the case here. But we must judge these cases based mostly upon actions, not intentions, and we must keep in mind that a child deserves to have some final resolution within a time frame that is appropriate from that child's sense of time." *In re A.A.*, 38 Kan. App. 2d 1100, 1105, 176 P.3d 237 (2008).

We affirm the district court's judgment.