NOT DESIGNATED FOR PUBLICATION

No. 118,602

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of N.M.D.,
A Minor Child.

MEMORANDUM OPINION

Appeal from Allen District Court; TOD MICHAEL DAVIS, judge. Opinion filed April 27, 2018.
Affirmed.

*Sue DeVoe*, of DeVoe Law LLC, of Osage City, for appellant natural father.

*Jacqie Spradling*, assistant county attorney, for appellee.

*Charles H. Apt III*, guardian ad litem.

Before BRUNS, P.J., HILL, J., and WALKER, S.J.

PER CURIAM: In May 2015, the district court adjudicated N.M.D.—who was born in 2011—to be a child in need of care. Just prior to the final termination hearing in July 2017, N.M.D.'s natural mother voluntarily relinquished her parental rights, and she is not a party to this appeal. After the hearing, the district court terminated the parental rights of J.D., the natural father of N.M.D. Specifically, the district court found J.D. to be an unfit parent and that the unfitness was unlikely to change in the near or foreseeable future. Moreover, the district court concluded that the termination of J.D.'s parental rights would be in the best interests of N.M.D. On appeal, J.D. contends that there is not substantial and compelling evidence in the record to support the district court's findings and conclusions regarding unfitness. Finding that clear and convincing evidence in the record supports the district court's decision, we affirm.

1

N.M.D.—who was about 3 years old at the time—was taken into protective custody in February 2015. The State's child in need of care petition identified three events that occurred in January and February 2015:

- First, that law enforcement officers had executed a search warrant at the home of N.M.D.'s natural parents and located drug paraphernalia, residual illegal narcotics, and bottles of prescription medication that were not prescribed to any of the residents of the home;
- Second, that N.M.D.'s natural mother had been arrested on DUI charges; and,
- Third, J.D. had been arrested for violating a protection from abuse (PFA) order that N.M.D.'s natural mother had obtained against him.

The district court adjudicated N.M.D. as a child in need of care in May 2015. Shortly thereafter, KVC Behavioral Health Systems developed a case plan for J.D. that included maintaining employment, living in appropriate housing, completing UAs when requested, and completing evaluations for mental health and substance abuse. The case plan also included a requirement that J.D. complete an anger management program and a batterer's intervention program because of his history of domestic violence.

At the time the district court held the first permanency hearing in November 2015, it found that J.D.'s progress on his case plan was inadequate. In May 2016, the State filed a motion to terminate the parental rights of both natural parents, relying on several subsections of K.S.A. 2015 Supp. 38-2269 and a presumption of unfitness in K.S.A. 2015 Supp. 38-2271 because N.M.D. had been in out-of-home placement for over one year. At the first termination hearing in June 2016, the district court did not sever J.D.'s rights but instead granted him 60 days to continue to work on his case plan.

2

Several months passed before the State filed a second motion to terminate J.D.'s parental rights in March 2017. The district court held a final termination hearing over the course of two days in July 2017. At that time, N.M.D.'s natural mother voluntarily terminated her parental rights.

At the final termination hearing, J.D. admitted that there was a history of domestic violence between him and N.M.D.'s natural mother. He also admitted that he had anger issues. In addition, there was evidence presented at the hearing that J.D. had a significant criminal history that includes convictions for domestic battery in December 2014, violation of a protective order and theft in January 2015, and for domestic battery in September 2015. Moreover, because of an aggravated sexual battery conviction in 2000, he is a registered sex offender.

The State also presented evidence that in October 2016, while this case was pending, a woman in a relationship with J.D. filed a police report stating that he had come to her house, broken out a window, and attempted to bust in the door. J.D. did not report the incident to KVC. The charge was pending at the time of the final termination hearing. The police report stated that the woman was also concerned with the way J.D. acted toward her children, a teenage daughter and older son.

Additionally, there was evidence presented that J.D. had used drugs—including methamphetamine—for about seven years prior to the filing of this action. He had criminal convictions relating to the use and distribution of methamphetamine. In addition, J.D. admitted to using methamphetamine between the first termination hearing in May 2016 and the final hearing in July 2017—once in November 2016 and again in January 2017. Moreover, lab results admitted as exhibits in this case reveal that in December 2016 and February 2017, J.D. provided urine samples that were diluted, resulting in him being discharged from a drug treatment program. At the time of the final termination hearing, J.D. was on probation for distribution of methamphetamine.

According to the evidence presented at the final termination hearing, J.D. was initially making progress in complying with the terms of his case plan. In particular, he obtained a mental health evaluation; attended one therapy session; completed a drug and alcohol evaluation; completed the required parenting class and six additional hours of parenting training; and applied for a job. However, J.D.'s case manager, Angela Black, testified that after three to four months of compliance in 2015, "it all basically went to heck in a handbasket."

Specifically, in July 2015, J.D. was arrested for domestic assault and battery against N.M.D.'s natural mother. As a result, he was incarcerated from July to September 2015. While J.D. was incarcerated, the natural mother obtained a Protection from Abuse (PFA) order against J.D. Because the PFA order also prevented J.D. from having contact with N.M.D., J.D.'s visits with him were suspended until December 2015. Black also testified that in early 2016, J.D. was again making progress working on his case plan. Unfortunately, he again fell out of compliance and evidently went "AWOL" from March 2016 to June 2016. During that period, no UAs were performed and no case plan tasks were performed. Furthermore, Black testified that J.D. failed to complete several of the tasks in his most recent case plan in the seven months between the first termination hearing and the final termination hearing.

Another case manager, Amy Boaz, worked with J.D. for six weeks in March and April 2017. At the final termination hearing, she testified that during that time, J.D. made significant progress working on his case plan. Boaz also opined that there was a substantial probability that—given more time and continued effort—J.D. could complete the tasks required by the case plan. However, she acknowledged that J.D.'s history of drug use might "possibly" prevent him from being able to care for the needs of N.M.D. in the future.

4

When asked if she concurred with KVC's recommendation that J.D.'s parental rights be terminated, Boaz testified that, if she only considered the six weeks she was on the case, she would not concur. Nevertheless, Boaz testified that considering the entire case, she would concur with the recommendation to terminate. A final case manager, Fawn Gahman-Anos, was on the case for the 10 weeks prior to the final termination hearing. She testified that J.D. had not completed the tasks required by his case plan. Likewise, she testified that J.D. had only started working on several of the tasks within the two weeks prior to the hearing.

Subsequently, the district court entered an order on August 17, 2017 terminating J.D.'s parental rights. In its Order Finding Parent Unfit and Granting Termination of Parental Rights, the district court found "by clear and convincing evidence that the natural father is presumed, in a manner provided for in K.S.A. § 60-414(a), to be unfit because the child has been in an out-of-home placement, under court order, for a cumulative total period of greater than two years. . . ." Citing K.S.A. 2017 Supp. 38-2271(a)(5), the district court also found that J.D. had "neglected or willfully refused to carry out a reasonable plan, approved by the court, directed towards reintegration of the child into the parental home, and that there is a substantial probability that [he] will not carry out such plan in the near future."

The district court's order went on to find clear and convincing evidence that J.D. is an unfit parent under several subsections of K.S.A. 2017 Supp. 38-2269. However, the district court noted that J.D. had presented evidence of "recent positive actions" that he had taken as well as his rehabilitation efforts. According to the district court, had it only looked at the events of recent months, it might have ruled differently. Nevertheless, the district court found that it was required to consider evidence "over the entire span of this case." Accordingly, the district court found that J.D. had failed to "rebut the presumption of unfitness" articulated in the order. Finally, the district court concluded termination of J.D.'s parental rights would be in the best interests of N.M.D.

5

*Standard of Review*

A parent has a fundamental liberty interest in the relationship with his or her child. *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). K.S.A. 2017 Supp. 38-2269(a) imposes the burden upon the State to prove the allegations of conduct that form the basis for termination of parental rights by clear and convincing evidence. See *Kramer*, 455 U.S. at 769-70. On appeal, we review all of the evidence in the record on appeal—in the light most favorable to the State—to determine, whether a rational fact-finder could have found that there was clear and convincing evidence to support the district court's determination. *In re B.D.-Y*, 286 Kan. 686, 705, 187 P.3d 594 (2008). In reviewing the district court's decision, we may not reweigh the evidence or make determinations regarding the credibility of witnesses. 286 Kan. at 705.

*Presumption of Unfitness Under K.S.A. 2017 Supp. 38-2271*

In the present case, the district court found that the State had proved that J.D. was presumptively unfit pursuant to K.S.A. 2017 Supp. 38-2271(a)(5) and unfit under four of the bases listed in K.S.A. 2017 Supp. 38-2269. A presumption of unfitness arises if the State proves, by clear and convincing evidence, any of the circumstances listed in K.S.A. 2017 Supp. 38-2271(a). However, a parent may rebut the presumption by establishing— by a preponderance of the evidence—either that he or she is a fit parent or that he or she will become a fit parent within the near future. If the parent fails to rebut the presumption, K.S.A. 2017 Supp. 38-2271(b) provides that the district court *shall* terminate parental rights.

The district court found that a presumption of unfitness arose because N.M.D. had been in an out-of-home placement by court order for more than two years. Moreover, the district court found that J.D. had substantially neglected or willfully refused to carry out a

reasonable case plan directed toward reintegration of N.M.D. into the parental home, and that there was a substantial probability that he would not fulfill the terms of the case plan in the near future. We note that the district court incorrectly cited K.S.A. 2017 Supp. 38-2271(a)(5), which applies when the child has been in out-of-home placement for more than one year. Because N.M.D. had been in out-of-home placement for more than two years by the time of the final termination hearing, K.S.A. 2017 Supp. 38-2271(a)(6) would be applicable.

There is a significant difference between the two statutory provisions. On the one hand, K.S.A. 2017 Supp. 38-2271(a)(5) requires the State to prove that the parent "has *substantially neglected or willfully refused* to carry out" a reasonable reintegration plan. (Emphasis added.) On the other hand, K.S.A. 2017 Supp. 38-2271(a)(6) simply requires the State to prove that the parent "*failed* to carry out" a reasonable reintegration plan and that there is a substantial probability that the parent will not carry out such a plan in the near future. (Emphasis added.) K.S.A. 2017 Supp. 38-2271(a)(6)(B),(C). Because the statutory provision mistakenly applied by the district court required the State to prove more than what it was required to prove under the correct statutory provision, we do not find that J.D. was prejudiced by this mistake.

A review of the record on appeal reveals that J.D.'s case plan included, among other things, obtaining evaluations for mental health and alcohol and drug abuse, providing UAs when requested, remaining drug free, providing pay stubs verifying employment and income, maintaining housing adequate for reintegration, and completing a batterer's intervention program. Although J.D. argues that he was in compliance with these tasks by the time of the hearing, he mischaracterizes the evidence. For example, confirmation of *enrollment* in a batterer's intervention program is not the same as confirming *completion* of the program. In fact, the program in which J.D. enrolled evidently started around July 1—less than two weeks prior to the July 13 termination hearing.

7

Based on J.D.'s history, we find his failure to complete a batterer's intervention program to be significant. The record reflects that J.D. was "kicked out" of a domestic violence offender program administered through the Kansas Attorney General's office in November 2016 because he refused to accept responsibility for his actions. Instead, he blamed the victim in each case—including the victim in the aggravated sexual battery case that resulted in him being required to register as a sex offender. Kim Bowers, the executive director of Solid Ground Treatment Center, testified at the final termination hearing, "Yes, he attended, but no, he did not make progress."

The record also reflects that N.M.D. has exhibited awareness of J.D.'s violence toward women. The aunt with whom N.M.D. was temporarily placed reported that he had witnessed J.D. harming his natural mother. Moreover, J.D. admitted that N.M.D. had been present when some of the domestic violence incidents with the natural mother occurred and that N.M.D. had witnessed his parents arguing. Moreover, a KVC family support worker reported that during J.D.'s supervised visits with N.M.D., she observed play that caused her concern. Although the district court noted the "recent positive actions" taken by J.D., it found this did not offset his past actions and relapses during the course of this termination of parental rights action.

*Likelihood of Change*

The last requirement to establish a presumption of unfitness under K.S.A. 2017 Supp. 38-2271(a)(6) is that there is a substantial probability that J.D. will not carry out the reintegration plan in the near future. K.S.A. 2017 Supp. 38-2271(a)(6)(C). This element parallels the element of "likelihood of change in the foreseeable future" in K.S.A. 2017 Supp. 38-2269. What constitutes the "near" or "foreseeable" future must be considered from a child's perspective—not the parent's perspective—because the time perception of a child differs from that of an adult. See *In re S.D.*, 41 Kan. App. 2d 780, 790, 204 P.3d 1182 (2009). In other words, children deserve to have a final resolution

within a time frame that is appropriate from their sense of time. *In re A.A.*, 38 Kan. App. 2d 1100, 1105, 176 P.3d 237, *rev. denied* 286 Kan. 1177 (2008).

The present action was pending for two and a half years before the final termination hearing—about half of N.M.D.'s life. Moreover, "continued unfitness [in the future] can be judicially predicted from a parent's past history." *In re Price*, 7 Kan. App. 2d 477, 483, 644 P.2d 467 (1982). Based on our review of the record, we noted that during the two and a half years this action has been pending, J.D.'s has had short periods of compliance followed by periods of non-compliance. The State produced clear and convincing evidence that while this action was pending, J.D. has continued to use drugs and commit domestic violence at different points. Accordingly, we conclude that a reasonable fact-finder could find based on the evidence in the record on appeal that it is highly probable that J.D. will not carry out the reintegration plan in the near future.

*Findings of Unfitness Under K.S.A. 2017 Supp. 38-2269*

In addition to finding the presumption of unfitness was proved, the district court also found that the State had proved by clear and convincing evidence that J.D. is unfit to parent based on four other statutory grounds. Specifically, the district court found four sections of K.S.A. 2017 Supp. 38-2269 to be applicable to J.D. Pursuant to K.S.A. 2017 Supp. 38-2269(f), any one of them, standing alone, may be a sufficient to support a termination of parental rights.

We first discuss K.S.A. 2017 Supp. 38-2269(c)(3), failure to carry out a reasonable case plan approved by the district court directed toward the reintegration of the child into the parental home. We find that the evidence set out above regarding the presumption of unfitness under K.S.A. 2017 Supp. 38-2271(a)(6) also proves this ground. Although J.D. made efforts to comply with his case plan, there is clear and convincing evidence in the record to support the district court's conclusion that he failed to do so.

9

The district court also found that J.D. is unfit based on his lack of effort to adjust his circumstances, conduct, or conditions to meet the needs of the child. K.S.A. 2017 Supp. 38-2269(b)(8). Again, we find the evidence cited above supports this conclusion. There is clear and convincing evidence in the record that J.D. continued to use drugs and to commit crimes while this action was pending. Likewise, there is clear and convincing evidence in the record that J.D. did not successfully complete the first domestic violence offender program he attended and did not seek to enter another program until shortly before the final termination hearing.

The district court also found unfitness under K.S.A. 2017 Supp. 38-2269(b)(7). Specifically, the district court found that reasonable efforts by public or private agencies to rehabilitate the family were unsuccessful. Based on review of the record, we find that there is clear and convincing evidence to support this finding. Although several case managers worked with J.D. and the natural mother, their efforts were not successful.

In light of our conclusions regarding the other findings of unfitness made by the district court, it is unnecessary for us to address the finding that J.D. failed to pay a reasonable portion of the cost of substitute physical care and maintenance based on ability to pay under K.S.A. 2017 Supp. 38-2269(c)(4).

We also recognize that K.S.A. 2017 Supp. 38-2269(a) requires the State to prove that the unfitness is unlikely to change in the foreseeable future. This analysis is the same as the "near future" analysis in the discussion of K.S.A. 2017 Supp. 38-2271. Accordingly, for the reasons stated previously in this opinion, we also conclude that the State met its burden to prove that J.D.'s unfitness is unlikely to change in the foreseeable future.

*Best Interests of the Child*

When a district court finds a parent unfit under either K.S.A. 2017 Supp. 38-2271 or K.S.A. 2017 Supp. 38-2269, it must also consider whether termination of parental rights is in the best interests of the child. In making this determination, the district court is to give primary consideration to the physical, mental, and emotional health of the child. K.S.A. 2017 Supp. 38-2269(g)(1). The district court is in the best position to make findings on the best interests of the child, and its judgment will not be disturbed unless it abused its judicial discretion. *In re K.P.*, 44 Kan. App. 2d 316, Syl. ¶ 4, 235 P.3d 316, *rev. denied* October 20, 2010.

As indicated above, N.M.D. was exposed to domestic violence and other anger issues involving his natural parents. This is not only harmful to the mental and emotional health of the child but can also put a child's physical health at risk. Moreover, one of the case managers who worked with the family testified that it would be in N.M.D.'s best interests to have permanency instead of further delay. Hence, we conclude that the district court's determination that the termination of J.D.'s parental rights is in the best interests of N.M.D. was reasonable based on the clear and convincing evidence in the record on appeal and did not constitute an abuse of discretion.

We, therefore conclude, based on our review of the evidence presented at the final termination hearing—viewed in the light most favorable to the State—that a rational fact-finder could have found J.D. to be an unfit parent by clear and convincing evidence. Furthermore, we conclude that the district court did not err in finding that J.D.'s parental rights should be terminated. Accordingly, we affirm the district court's decision.

Affirmed.