(176 P.3d 237)
No. 98,835

IN THE INTEREST OF A.A.

Opinion filed February 8, 2008.

*Kent A. Roth,* of Roth Law Office, of Ellinwood, for appellant natural father.

*Joel B. Jackson,* of Great Bend, for appellant natural mother.

*Julie A. Carroll,* assistant county attorney, *Douglas A. Matthews,* county attorney, *Jane Isern,* guardian ad litem, and *Paul J. Morrison,* attorney general, for appellee.

Before MARQUARDT, P.J., GREEN and LEBEN, JJ.

LEBEN, J.: After A.A., a 10-year-old girl, was allegedly raped by her 15-year-old brother, H.A., she was declared a child in need of care and taken into protective custody. Eventually, the parental rights of Harold and Vickie A. to A.A. were terminated. Harold and Vickie have appealed, raising three claims.

First, they claim that the Revised Kansas Code for Care of Children unconstitutionally denies equal treatment based on race because the Indian Child Welfare Act precludes the termination of parental rights unless the parents' unfitness is proved beyond a reasonable doubt while the Kansas statute requires proof of unfitness "only" by clear and convincing evidence for non-Indians. But these laws differ for Indian tribes not because of their race but because of their unique historical claims to sovereignty and the decisions Congress has made because of that history. Second, they claim that there is insufficient evidence to support the district court's decision. But Harold and Vickie's failure to address or even acknowledge the sexual abuse allegations combined with other evidence—including their failure to make reasonable progress in creating a suitable home for their child—provided ample support for the decision when giving deference to the lower court, which heard the witnesses directly. Third, they claim that the district court abused its discretion either by denying a trial continuance or by failing to interview the then 11-year-old child. A trial judge is vested with wide discretion in such matters, and she was well within that discretion here.

*The Case Arose Amid Serious Allegations and Ended in Termination of Parental Rights.*

Police had responded to the parties' home after a third party had reported alleged sexual abuse by H.A. against both A.A. and the third party. The police officer who responded reported several reasons for concern about A.A.'s safety in the home:

- A.A. did not have a bedroom and was sleeping on a couch in the living room, and H.A. was still living in the same residence. (A.A.'s bedroom had been given to another person who was living with the family.)

- There were at least 5 cats and 1 dog inside the house, plus two more dogs outside.
- The house smelled strongly of a dirty cat litter box and old trash.
- An old vehicle battery was lying just inside the front door; it had a stuffed bear on top of it.
- There were large piles of animal feces and other trash just outside the front door.
- There were prescription bottles lying around the room in which 10-year-old A.A. kept her toys.

The officer took A.A. into protective custody, concerned for her safety both because of the continued presence of H.A. and the living conditions at the house. A child-in-need-of-care petition was filed, and temporary custody was given to the Kansas Department of Social and Rehabilitation Services (SRS).

A.A. was taken into SRS custody in February 2006. Court orders entered then provided for supervised visitation with her parents, and the parents were ordered to cooperate with any case plans that might be entered. Frequent review hearings were held, and specific steps were outlined for reintegration of A.A. into her family. When little progress had been made in more than a year, however, the State filed a motion to terminate parental rights in May 2007.

The district court heard that motion in an evidentiary hearing on June 4, 2007. Six witnesses testified, including both parents.

The district court found that both parents were unfit "based upon their conduct and the lack of effort in this case." She noted that they had had 16 months to work on reintegration but had made little progress. Harold was living in his truck, which the court found not suitable for raising a child. Vickie was living with her mother, but the court found that Vickie had not taken advantage of SRS offers to clean her former residence and that Vickie had not provided a suitable home for A.A. to live in, either.

*The Kansas Revised Code for Care of Children Does Not Violate Equal Protection Through Use of a Lower Evidentiary Standard than Found in the Indian Child Welfare Act.*

The Revised Kansas Code for Care of Children provides that parental rights may be terminated only upon a showing of unfitness by clear and convincing evidence. K.S.A. 2006 Supp. 38-2269(a). The Indian Child Welfare Act presents an even greater evidentiary hurdle before parental rights between Indian parents and children may be terminated: unfitness must be proved beyond a reasonable doubt. 25 U.S.C. §1912(f) (2000). Harold and Vickie argue that they are denied equal protection of the law since termination of their parental rights is allowed under an evidentiary standard that is easier to meet than the one used in cases involving Native Americans.

This argument presents an issue of first impression in Kansas, but other states have rejected this argument after reviewing the basis behind the difference in treatment. In one of those cases, the Nebraska Supreme Court upheld its state statute against an equal-protection challenge. *In re Interest of Phoenix L.*, 270 Neb. 870, 708 N.W.2d 786 (2006). Nebraska's statutory scheme was the same as Kansas' in applying a standard of clear and convincing evidence in cases involving non-Indian families. The Nebraska court noted that the different standard for Indians was based not on race, but on their unique history as sovereign political communities. The Nebraska court found that there was a rational basis behind the different standards and concluded that its state statute on the termination of parental rights did not violate the equal-protection rights of non-Indians. 270 Neb. at 883-84. Several other courts have rejected similar challenges. *E.g., Adoption of Hanna S.*, 142 Cal. App. 4th 988, 996, 48 Cal. Rptr. 3d 605 (2006); *In re Marcus S.*, 638 A.2d 1158, 1159 (Me. 1994); *Matter of M.K.*, 964 P.2d 241, 244 (Okla. App. 1998); *State ex rel. CSD v. Graves*, 118 Or. App. 488, 490-91, 848 P.2d 133 (1993).

We agree with the holding and rationale of these cases. The United States Supreme Court has consistently held that laws do not violate equal protection when they treat Indians differently than other groups. In *United States v. Antelope*, 430 U.S. 641, 645, 51 L. Ed. 2d 701, 97 S. Ct. 1395 (1977), the Court said that federal legislation "with respect to Indian tribes . . . is not based upon impermissible racial classifications." Rather, the Court noted that

these classifications are based on the unique history of the federal government's relations with Indians. In *Morton v. Mancari*, 417 U.S. 535, 41 L. Ed. 2d 290, 94 S. Ct. 2474 (1974), the Court said that heightened scrutiny should not be applied to special legal status for Indians: "As long as the special treatment can be tied rationally to the fulfillment of Congress' unique obligation toward the Indians, such legislative judgments will not be disturbed." 417 U.S. at 555. The higher standard of proof under the Indian Child Welfare Act is rationally related to the government's purpose of protecting and preserving Indian families because it ensures that Indian children remain with Indian families unless there is no doubt that the child should be removed. The use of a lower—but still quite stringent—burden of proof in cases involving non-Indian parents does not violate equal protection.

*Substantial Evidence Supported the District Court's Finding of Unfitness.*

Harold and Vickie contend that there was not sufficient evidence for a finding of unfitness. On appeal, we look to see whether there is substantial evidence—what a reasonable person would accept as sufficient to support a conclusion—in support of the trial court's conclusions. We are required to view the evidence in the light most favorable to the judgment of the trial court, which heard the witnesses directly. We must not reweigh the evidence, substitute our evaluation of the evidence for that of the trial court, or pass upon the credibility of the witnesses. And we must be able to determine that the State's evidence was clear and convincing. *In re J.D.C.*, 284 Kan. 155, 170, 159 P.3d 974 (2007).

Under this standard of review, there is sufficient evidence to support the district court's finding of unfitness. There was considerable testimony that both Harold and Vickie had failed to address—or even acknowledge—the sexual abuse allegations made by A.A. Neither parent made substantial progress on the case plan regarding their living conditions. Harold was living in his truck at the time of the final hearing. Vickie was unemployed, did not have a driver's license, and was living with her mother in a home that social workers deemed unsuitable for children. For several months,

both parents delayed in getting parenting evaluations required by the court as a step toward reintegration with A.A. Harold took no substantial steps toward implementing the recommendations of that evaluation; Vickie took some steps, but those steps occurred for the most part only days before the final hearing. Her willingness to make long-term changes thus was left subject to substantial question.

Cases like this are difficult ones. A parent may be labeled "unfit" under the law even though he or she loves the child and wants to do the right thing, which may be the case here. But we must judge these cases based mostly upon actions, not intentions, and we must keep in mind that a child deserves to have some final resolution within a time frame that is appropriate from that child's sense of time. The parents in this case had from February 2006 until June 2007 to make the kinds of changes that would have kept A.A. with them. The district court's decision was squarely supported by the evidence. It is time to allow A.A. to move on with her life.

*The District Court Did Not Abuse Its Discretion by Denying a Continuance or by Declining to Interview the Child.*

Vickie argues that the district court wrongly denied her attorney's request for a continuance of the final hearing. Harold argues that the district court wrongly denied his request that the judge interview the child before making a decision. A district court has substantial discretion in controlling the proceedings before it. We review those decisions for abuse of discretion and reverse only if no reasonable person would take the view adopted by the district court. *In re Adoption of J.A.B.*, 26 Kan. App. 2d 959, 964, 997 P.2d 98 (2000).

Vickie's attorney asked for a continuance of the June 4 hearing based on his statement that he did not receive the State's motion to terminate parental rights until May 22. How this might have occurred is not clear. The court file shows that the court clerk mailed a copy of the notice to him—and to the other attorneys in the case—on May 9. Harold's attorney apparently received the motion in a timely manner; Harold filed a written response to it

on May 21. In addition, Vickie was personally served with a copy of the motion by a sheriff's deputy on May 12.

Based on the claimed late notice of the hearing, Vickie's attorney argued that he had had inadequate time to prepare and that a necessary witness was on vacation and unable to testify. But a quick call to that witness' office found him in town, and he did testify. In addition, Vickie and her attorney had known since a February status hearing that the State was going to file a motion to terminate her parental rights to A.A.

Given this background, the presentation made by Vickie's attorney in support of the continuance request certainly did not provide a substantial reason for one to be granted. The attorney said that when he learned on May 22 of the upcoming June 4 hearing, he asked his client to check with the needed witness to see whether he would be available on June 4 and whether he would be subpoenaed to testify by the State. After the attorney said that he had assumed that this witness would be called by the State, the trial judge asked the appropriate follow-up question: "Why? Why did you assume that?" Vickie's attorney replied, "Because." There cannot be an abuse of discretion in denying the requested continuance where the attorney fails to provide adequate reasons for that continuance.

Harold argues that the district court abused its discretion by declining to interview A.A., which was requested at the end of the June 4 hearing. The district court declined the request, noting that it takes quite some time for a child to open up to a stranger and to be able to express her thoughts. The court also indicated that it did not wish to put the child into a situation in which "she is questioned about her making a choice" of whether to remain with her parents.

In support of his argument, Harold cites one out-of-state divorce case in which an appellate court concluded that the trial judge should have interviewed the child under that state's divorce law and the facts of the case at hand, *Stringer v. Vincent*, 161 Mich. App. 429, 434, 411 N.W.2d 474 (1987), and another in which the trial judge's decision not to interview the children in a divorce custody battle was upheld. *Pekarek v. Pekarek*, 384 N.W.2d 493,

498 (Minn. App. 1986). Our case arises under the Revised Kansas Code for Care of Children, which has a provision requiring that the court allow any child over 10 who is of "sound intellect" to testify "if requested by the child." K.S.A. 2006 Supp. 38-2262. In our view, since the legislature specified only one situation where the child *must* testify, the decision in other situations would be within the judgment of the district judge. A.A. made no request be heard personally, and the district court had ample information about A.A.'s emotional well-being from other witnesses. The district court did not abuse its discretion by declining to bring A.A. in for a personal interview.

The judgment of the district court is affirmed.