NOT DESIGNATED FOR PUBLICATION

No. 117,711

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of
I.I.M.,
A Minor Child.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; DANIEL T. BROOKS, judge. Opinion filed December 29, 2017. Affirmed.

*Jordan E. Kieffer*, of Dugan & Giroux Law, Inc., of Wichita, for appellant natural mother.

*Julie A. Koon*, assistant district attorney, and *Marc Bennett*, district attorney, for appellee.

Before GARDNER, P.J., PIERRON and ATCHESON, JJ.

PER CURIAM:  Mother appeals the district court's termination of her parental rights to I.I.M., challenging the district court's findings that she is unfit and that her unfitness is unlikely to change in the foreseeable future. Finding no error, we affirm.

*Factual and procedural background*

I.I.M. was born in 2012. In July 2014, law enforcement officers responding to a report arrived at Mother's home and found I.I.M. wearing only a t-shirt and observed feces, food, and trash all over the floor. Mother stated that I.I.M. was potty-training and sometimes went on the floor. There was little food in the home, and Mother reported that

she did not have time to clean the home because she was working two jobs and attending school.

When a social worker and a worker from the Department for Children and Families (DCF) returned to the home the next day, they saw that Mother had removed the trash but had made no attempt to remove the feces or clean the floor. When they told Mother it was feces on the floor, she disagreed and stated that it was food. Mother asked the worker, "it smells like feces?" Because the home remained unsafe and unsanitary for the child, DCF filed a child in need of care (CINC) petition.

Mother did not contest the petition, and the district court found that I.I.M. was a CINC. In January 2015, the State filed a motion for a finding of unfitness and termination of parental rights. At the first termination hearing, held in May 2015, several social workers and mental health professionals testified to Mother's multiple mental health diagnoses, including schizophrenia, and her failure to consistently take prescribed medications to manage her mental health. A witness testified that Mother reported taking "Mollys"—a mixture of cocaine, methamphetamine, and MDMA ("Ecstasy") and buying medication on the black market. The case manager reported difficulty convincing Mother of her need for medication compliance and substance abuse treatment because Mother did not believe that she had the issues the professionals in the case had observed.

The district court found that the State had presented, by clear and convincing evidence, a prima facie case of Mother and Father's current unfitness. But the district court granted a six-month continuance, finding Mother had the possibility of becoming the parent that her child needed. The district court set a new termination hearing for November 2, 2015, with 60-day reviews. On November 2, Mother was given, in an abundance of caution, another six-month extension to allow her to demonstrate consistent change.

At the end of that extension, in April 2016, the district court held a hearing and found that although Mother had made some substantial changes in her life, she continued to be inconsistent in making and keeping visitation appointments, taking medication, and participating in therapy and community support. The district court found that Mother continued to have difficulty determining the relative importance of things in her life as "necessary for a little kid to be able to grow up in an orderly life." After hearing testimony from Mother, case workers, counselors, and mental health professionals, the district court found that Mother was unfit, that her unfitness would not change within a time that is meaningful to I.I.M., and that it is in the best interests of I.I.M. for Mother's parental rights to be terminated. Mother timely appeals.

*Standard of Review*

Because a parent has a fundamental liberty interest in the relationship with his or her child, the allegations of conduct that form the basis for termination must be proved by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769-70, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). In applying that standard, we review all of the evidence, in the light most favorable to the State, to determine whether a rational fact-finder could have found that the truth of the facts asserted is highly probable. *In re B.D.-Y*, 286 Kan. 686, 697-98, 187 P.3d 594 (2008). In reviewing the district court's decision, we may not reweigh the evidence, judge the credibility of witnesses, or redetermine factual questions. 286 Kan. at 705.

To terminate parental rights, the district court must find that a parent is unfit by reason of conduct or condition which renders the parent unable to properly care for his or her child, that the conduct or condition is unlikely to change in the foreseeable future, and that termination of parental rights is in the child's best interests. K.S.A. 2016 Supp. 38-2269(a), (g)(1). These findings must be supported by clear and convincing evidence.

3

Mother contends that she had made significant progress toward reintegration and that insufficient evidence shows her unfitness and future unfitness, but Mother does not challenge the district court's finding that termination is in the best interests of I.I.M.

*The Statutory Scheme*

K.S.A. 2016 Supp. 38-2269(b) sets out a nonexclusive list of nine grounds for termination of parental rights. If supported by clear and convincing evidence, a single statutory basis for unfitness can support terminating a parent's rights. K.S.A. 2016 Supp. 38-2269(f); *In re M.H.*, 50 Kan. App. 2d 1162, 1170, 337 P.3d 711 (2014). The district court relied on two of these statutory bases:  Mother's emotional illness, mental illness, mental deficiency, or physical disability, of such duration or nature as to render her unable to care for the ongoing physical, mental, and emotional needs of the child, K.S.A. 2016 Supp. 38-2269(b)(1); and Mother's lack of effort to adjust her circumstances, conduct, or conditions to meet the needs of the child, K.S.A. 2016 Supp. 38-2269(b)(8).

I. *Management and effect of mental illness, K.S.A. 2016 Supp. 38-2269(b)(1)*

Mother reported that she was first diagnosed with schizophrenia at age 16 or 17. During this case, Mother was hospitalized for three days for psychosis and confusion in July 2014, shortly after I.I.M. was removed from the home. She was hospitalized for severe anxiety in November 2014. The records from COMCARE mental health center show that her primary diagnosis was schizoaffective disorder, bipolar type, with additional diagnoses of unspecified anxiety disorder; posttraumatic stress disorder; unspecified sedative-, hypnotic-, or anxiolytic-related disorder; mild cannabis use disorder; mild opioid use disorder; and narcolepsy.

Mother's attendance at mental health medication management appointments was spotty. She missed five appointments between February 2015 and February 2016. Mother

attended an appointment at COMCARE in November 2015, shortly after the court date at which the district court granted a second continuance. She was next seen on April 4, 2016—two days before the final termination hearing.

At the appointment, Mother reported that she was feeling "crazy depressed," did not want to do anything, and was sleeping much more than usual. She stated that she had been depressed for over a month and had stopped taking two of her medications because they had stopped working. The provider reported to the court that Mother was taking one of her medications "sporadically" and not taking the two antidepressants, based on the pharmacy fill records. Although several indicators on her mental status exam were within normal limits, the provider observed that she was malodorous, her attention and concentration were distracted at times, and her insight and judgment were poor. The provider found her prognosis to be "guarded."

The evidence of Mother's long-standing mental illness and her unwillingness or inability to manage it through medication convinces us that a rational factfinder could find it highly probable that she has an emotional or mental illness of such duration or nature as to render her unable to care for the ongoing physical, mental, and emotional needs of I.I.M. See K.S.A. 2016 Supp. 38-2269(b)(1).

II. *Lack of effort to adjust the parent's circumstances, conduct, or conditions, K.S.A. 2016 Supp. 38-2269(b)(8)*

The district court found that Mother had made "some substantial changes," and that she had shown she could "do well for a little while." The record supports those findings. But the district court also found that Mother's efforts were insufficient. In addition to Mother's failure to manage her illness medically, she also failed to consistently attend therapy sessions. Mother's therapist reported that Mother did not show up for a therapy session on April 1, 2016, because she forgot about it, but Mother seemed

5

anxious to reschedule because of the court's requirements. The Saint Francis Community Services (SFCS) case worker observed that Mother had failed to show secondary change in seeking therapy and was "engaging in therapy due to the upcoming court date and not because she sees that she has a need to be in therapy."

*Employment*

Mother contends that she consistently found and maintained full-time employment. The record confirms that Mother continuously obtained employment, but shows that she did not maintain jobs for long. Mother testified she had 14 to 16 jobs during one six-month extension period. During one six-month extension, Mother provided only two paystubs to verify her employment: one dated December 21, 2015, and another dated January 15, 2016, from a different employer. Mother lost one job because she was incarcerated for a probation violation. One month before the hearing, Mother left a voicemail for her reintegration social worker, in which she reportedly said that she got a new job and that she "gets a new job every two weeks." Mother's social worker reported that she had no proof that Mother was employed as of two weeks before the court date.

Mother's failure to maintain consistent employment evidences a lack of stability and illustrates that she has not adjusted her conduct or circumstances to provide for the financial and emotional needs of her child.

*Substance Abuse*

Mother's use of illegal drugs seems to have diminished significantly after the November 2015 hearing. She had negative drug screens in November and December 2015 but failed to report for testing in January 2016. She had a negative hair follicle test in March 2016. However, she had a DUI conviction in February 2016, reportedly for

6

Xanax, and she immediately violated her probation by failing to report for a court-ordered substance abuse evaluation. She served a sanction for that in the county jail. She was ordered to have a Breathalyzer lockout device installed in her car as a condition to having her driver's license restored, but it was not working at the time of the hearing. Mother's continuing substance abuse is incompatible with the physical and mental well-being of her child.

*Finances*

Mother completed a budgeting class in October 2014, but the record shows that Mother lacks financial stability. The only verification of employment and income that Mother provided was two paystubs from different employers in December 2015 and January 2016. As of the week before court, Mother still had not made any payments on her $953 obligation resulting from her DUI. She had no primary care provider because her previous provider refused to see her again until she paid her bill. SFCS had been paying for Mother's individual therapy since December 2016 because she could not afford it. However, she testified that she paid a person to drive her places at a cost of $5 per ride because she could not drive on a suspended license.

Relatives paid Mother's debt of more than $1,000 for her back rent in November 2015. Yet, she testified at the hearing that she had just rented a two or three-bedroom house with all new furniture and a washer and dryer, without explaining how she could afford to do so. Mother's financial choices do not demonstrate her ability to care for a child.

*Visitation*

Mother's failure to regularly schedule and attend visits with her son weighed heavily in the district court's decision. This can, of itself, be a sufficient basis for

termination. K.S.A. 2016 Supp. 38-2269(c)(2), (f). Section 38-2269(c) sets out four factors the district court must consider when, as here, the child is not in the physical custody of the parent. The factor particularly applicable here is (c)(2), "failure to maintain regular visitation, contact or communication with the child or with the custodian of the child." Mother's SFCS case worker reported that Mother failed to make appointments for visitation with I.I.M. and had canceled or arrived late for some appointments. From the first termination hearing in May 2015 until March 18, 2016, Mother attended only 22 of 44 possible visitations. From November 2015 to April 2016, Mother attended only 7 of 21 possible visits.

The visits never progressed beyond one-hour supervised visits because of safety concerns. Mother had been reminded more than once to move her medications from the table to a location where I.I.M. could not reach them and to move a hookah pipe from the floor. This showed an inability to put into practice the skills Mother was being taught.

Although Mother did make significant progress on some tasks, she failed to show continuous progress toward meeting the goals necessary for her to ably parent a child. We find clear and convincing evidence of Mother's unfitness.

III. *Likelihood of Change in the Foreseeable Future, K.S.A. 2016 Supp. 38-2269(a)*

Mother also challenges the district court's finding that her inability to care for her child is unlikely to change in the foreseeable future. K.S.A. 2016 Supp. 38-2269(a). "Foreseeable" is examined from the perspective of a child, not of an adult. *In re M.H.*, 50 Kan. App. 2d at 1170. A court may predict a parent's future unfitness based on his or her past history. *In re Price*, 7 Kan. App. 2d 477, 483, 644 P.2d 467 (1982).

Mother cites portions of testimony from her therapist, her probation officer, the SFCS family support worker, and the case manager about various changes Mother had made and about various attitudes she had exhibited. Mother quotes her own testimony which stated that she could care for the child "physically, emotionally, materially, and financially." But Mother had to rely on notes to testify to those conclusions and to present factors in her favor for reintegration.

Mother relies heavily on the following statement from the district court:

> "[M]other has made some changes and they are substantial. First of all, she was working as a dancer [at Jezebel's adult entertainment club]. That's no longer part of her life. She wasn't on medication; really, may have been self-medicating. That's changed. She now really believes that these medications are part of what enables her to get on with her life. So I think she has made some efforts."

This statement, however, precedes the district court's crucial findings that Mother had not made sufficient, consistent changes that would enable her to safely parent I.I.M., as we have detailed above.

The record shows that Mother failed to demonstrate stability, consistency, and the ability to prioritize her son's needs, even after having received two extensions. After two extensions totaling 11 months, Mother had still not demonstrated consistent attendance at counseling appointments, medication management appointments, or visitation with I.I.M., and she failed to consistently take medications prescribed for her mental illness. Although this is not an egregious case, the record shows it is highly probable that Mother's unfitness would not change within a time that's meaningful to I.I.M.

The district court also found that Mother loves I.I.M. and that he loves her. A parent may be found "unfit" even though he or she loves the child. See *In re A.A.*, 38 Kan. App. 2d 1100, 1105, 176 P.3d 237 (2008). Such is the case here. The district court

9

properly found that despite Mother's affection for her son, she is unable to safely take care of him "day in/day out, 24-7."

The record contains clear and convincing evidence supporting the district court's findings that Mother is unfit and that her unfitness is unlikely to change in the foreseeable future. The record additionally shows, as Mother concedes, that termination of her parental rights is in I.I.M.'s best interests.

Affirmed.