NOT DESIGNATED FOR PUBLICATION

No. 118,433

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interests of A.H. and J.J.,
Minor Children.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; DANIEL CAHILL, judge. Opinion filed June 1, 2018.
Affirmed.

*J. Shane Rockey*, of Rockey & Stecklein, Cthd., of Kansas City, for appellant natural mother.

*Ashley Hutton*, assistant district attorney, and *Mark Dupree*, district attorney, for appellee.

Before ARNOLD-BURGER, C.J., HILL and BUSER, JJ.

PER CURIAM:  If a child has been adjudicated to be a child in need of care, then
parental rights may be terminated "when the court finds by clear and convincing evidence
that the parent is unfit by reason of conduct or condition which renders the parent unable
to care properly for a child and the conduct or condition is unlikely to change in the
foreseeable future." K.S.A. 2017 Supp. 38-2269(a). After making a finding of unfitness,
the court must consider whether the termination is in the best interests of the child.
K.S.A. 2017 Supp. 38-2269(g)(1).

Mother appeals the termination of her parental rights. She first argues that the
district court should have continued the hearing because she was at an inpatient drug
treatment center. However, the fact that Mother finally sought treatment for her drug
issues, which were a primary factor in the original child in need of care (CINC) finding,

does not lead to the conclusion that the district court abused its discretion in denying the motion to continue. Mother also argues that the district court erred in holding that her conduct or condition was unlikely to change in the foreseeable future. Mother failed to make progress not only on her drug issues, but on a number of other court orders. Her failure to make progress on these orders in the year the case was pending supports the district court's finding on this factor. Accordingly, finding no error, we affirm.

## FACTUAL AND PROCEDURAL HISTORY

In October 2015, a Kansas Department for Children and Families (DCF) worker received a report that V.H. (Mother) used PCP and marijuana while pregnant. Mother told the DCF worker that she was not pregnant anymore because she got into a fight with her ex-boyfriend and his new girlfriend and they pushed her down, causing her to lose her baby. When the worker asked about Mother's other two children, A.H. and J.J., Mother hung up the phone.

In December 2015, the children were reported to DCF "due to concerns that the family [was] homeless as a result of being 'kicked out' of the home after a domestic violence incident between [Mother] and her boyfriend." Mother had gone to the hospital but became physically aggressive and security had to escort her off of the property. Mother went to another hospital and stole medical equipment before leaving. Mother declined assistance finding shelter. The DCF worker handling this report located mother after calling the Missouri Department of Social Services (DSS). Mother said there were two men that were trying to kill her and that the children had witnessed domestic violence. Mother reported that "she and the children were once locked in a closet for two weeks because of one of the men." Mother said she was "tired of running back and forth between Missouri and Kansas to get away from these men." She agreed to family preservation services and said "she wants all the help she can get."

2

A DCF worker and a KVC family preservation worker went to Mother's house in January 2016. After informing Mother that random UAs would be given to caregivers in the home due to concerns of substance abuse, Mother said "she [did] not want people in her home and in her business." The DCF worker told Mother that the court would get involved if Mother declined services. Mother said: "'[Y]ou go ahead and do that, you don't want to mess with me,'" and "'ain't nobody going to take my children from me.'" After this, Mother refused services from the State.

The State filed a petition declaring A.H. and J.J. children in need of care in February 2016. DCF received a report that Mother was using crack, methamphetamine, and marijuana. The report also provided that the children were left in the home overnight without supervision and that they would eat and stay at their neighbor's house. Finally, there were concerns that Mother was a prostitute as men were in and out of the home.

Less than two months later, DCF received a report that Mother had dropped A.H. off at the Juvenile Intake and Assessment Center after he and Mother had gotten into a fight over a cell phone. A.H. reported that Mother was high when she dropped him off. The DCF worker got into contact with the Missouri DSS and discovered that five reports had been made regarding Mother since December 2015. She also discovered that Mother had another child, F.J., who resided with his grandmother. F.J. has sickle cell disease, and Mother had been reported for stealing his medication. The State filed an amended petition in April 2016 which added more facts.

The amended petition stated that an emergency existed, necessitating out of home placement based on Mother's drug use and failure to cooperate with DCF and family preservation services. The district court issued an ex parte order of protective custody. In lieu of a hearing, Mother stipulated that the children were in need of care. Mother admitted that she had a drug problem when the petition was filed, but asserted that she was receiving treatment for it. The district court issued a number of interim orders,

3

including providing verification of stable income and housing, keeping in contact with her court services officer, obtaining drug treatment, and submitting negative UAs.

In March 2017, the State filed a motion for termination of parental rights. The State alleged that Mother failed to provide verification of stable income. Mother also did not have stable housing, but she was living with a friend and she provided a copy of his lease. Mother failed to keep in contact with her court services officer. Additionally, Mother did not complete a Safe Kids assessment or a mental health assessment. However, she did complete a psychosocial assessment and attended medication management. While Mother reported that she started drug treatment, she only provided verification that she completed the intake and did not engage in further treatment. She was requested to submit five UAs during the pendency of the case. Only her second test was negative. Her first test was positive for methamphetamine and PCP, and the fifth test was positive for methamphetamine, amphetamines, PCP, and MDMA. The temperature strip did not register for her third test, and that was counted as a positive. She did not call or show up to her fourth test. Finally, Mother was frequently unreachable and had not attended supervised visits on a consistent basis.

The district court held a hearing in May 2017. Mother did not appear. Her attorney explained that she had been trying to get into an inpatient program before the hearing began. She was only able to begin the weekend before the hearing, making her unavailable. The attorney requested a continuance. The district judge replied that the children had been in State custody for one and a half years. The judge stated that the fact that Mother only went into treatment four days before her termination hearing "unfortunately sends the message that it's not her children's benefit and welfare that has led her to do this treatment, but the . . . impending termination of some of her rights." The court denied the motion for continuance, holding that "forcing these children to remain in this state of limbo is [not] in any way in their best interest." The State proffered the allegations in the petition to terminate parental rights.

Following the hearing, the district court terminated Mother's parental rights. The court found that Mother was unfit by conduct or condition which rendered her unlikely to care for her children and that the conduct or condition was unlikely to change in the foreseeable future for the following statutory reasons:

- Excessive use of intoxicating liquors or narcotic or dangerous drugs of such duration or nature as to render her unable to care for the ongoing physical, mental, or emotional needs of the children. K.S.A. 2017 Supp. 38-2269(b)(3).
- Physical, mental, or emotional neglect of the children. K.S.A. 2017 Supp. 38-2269(b)(4).
- Reasonable efforts by appropriate public or private child caring agencies had been unable to rehabilitate the family. K.S.A. 2017 Supp. 38-2269(b)(7).
- Lack of effort to adjust her circumstances, conduct, or condition to meet the needs of her children. K.S.A. 2017 Supp. 38-2269(b)(8).
- Failure to carry out a reasonable plan approved by the court directed toward the integration of the children into the parental home. K.S.A. 2017 Supp. 38-2269(c)(3).

Mother appealed.

## ANALYSIS

*The district court did not err when it denied Mother's motion for continuance.*

Mother argues that the district court erred by denying her motion to continue the termination trial.

A district court must consider whether granting a motion for continuance of a termination hearing is in the best interests of the child. K.S.A. 2017 Supp. 38-2267(a).

5

Additionally, a continuance "shall not be granted unless good cause is shown." K.S.A. 2017 Supp. 38-2246. This court reviews a district court's denial of a motion for continuance for abuse of discretion. *In re A.A.*, 38 Kan. App. 2d 1100, 1105, 176 P.3d 237 (2008). A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the trial court; (2) it is based on an error of law; or (3) it is based on an error of fact. *Wiles v. American Family Life Assurance Co.*, 302 Kan. 66, 74, 350 P.3d 1071 (2015).

Mother asserts that she made her motion diligently and in good faith. She states that she "had attempted and been turned away from other inpatient facilities and had only been accepted into treatment a few days before the termination trial was set." She argues that she was addressing the very issues that led the district court to terminate her parental rights. She also notes that the court made a factual error when it calculated how long the children had been in State custody. The district court judge stated that the children had been in the "State's custody for going on a year and a half. They came in in February of 2016." The case was initiated in February 2016. The State removed the children from Mother on April 1, 2016, due to concerns about Mother's drug use. The termination hearing was on May 31, 2017. Therefore, the children had only been in State custody for a year and two months, not a year and a half as the district court asserted.

While the court made a minor error in calculating the time the children were in state custody, it did not abuse its discretion. Mother did not begin seeking drug treatment until January 2017 when she found out that a termination trial was imminent. If Mother had truly been diligent, she would have sought treatment in the year prior to finding out that the State was requesting termination. Instead of seeking treatment, she continued to use drugs and tested positive for multiple substances. Mother has provided no reason why she did not attempt to enter treatment during that time. Given that her drug use was a primary factor in the children's removal from her home, she should have addressed this issue long before the termination hearing.

6

Moreover, if lack of treatment were the only issue, Mother's claim would be more compelling. But Mother failed to comply with numerous conditions imposed on her for reintegration. Mother had a significant amount of time in which to make progress on the court orders. Although she complied with some orders, there were a substantial number remaining. The fact that Mother finally secured inpatient treatment over a year after the CINC case began does not provide a basis for finding that the district court abused its discretion in denying her motion to continue.

*There was sufficient evidence to terminate Mother's parental rights.*

Mother argues that the evidence was insufficient to terminate her parental rights. Specifically, she challenges the district court's finding that her conduct or condition was unlikely to change in the foreseeable future.

When reviewing a district court's decision to terminate parental rights, the appellate court considers "whether, after review of all the evidence, viewed in the light most favorable to the State, it is convinced that a rational factfinder could have found it highly probable, *i.e.*, by clear and convincing evidence, that [the parent's rights should be terminated]." *In re B.D.-Y.*, 286 Kan. 686, 705, 187 P.3d 594 (2008). "[C]lear and convincing evidence" requires the factfinder to believe "that the truth of the facts asserted is highly probable." 286 Kan. at 697. The appellate court does "not weigh conflicting evidence, pass on credibility of witnesses, or redetermine questions of fact." 286 Kan. at 705.

If a child has been adjudicated to be a child in need of care, then parental rights may be terminated "when the court finds by clear and convincing evidence that the parent is unfit by reason of conduct or condition which renders the parent unable to care properly for a child and the conduct or condition is unlikely to change in the foreseeable future." K.S.A. 2017 Supp. 38-2269(a). "The foreseeable future is examined from the

7

perspective of a child because children and adults have different perceptions of time and children have a right to permanency within a time frame reasonable to them." *In re M.H.*, 50 Kan. App. 2d 1162, 1170, 337 P.3d 711 (2014). If the district court "makes a finding of unfitness, the court shall consider whether termination of parental rights . . . is in the best interests of the child." K.S.A. 2017 Supp. 38-2269(g)(1). In making this determination, the court must "give primary consideration to the physical, mental and emotional health of the child." K.S.A. 2017 Supp. 38-2269(g)(1).

Here, clear and convincing evidence supports the district court's conclusion that Mother's conduct or condition was unlikely to change in the foreseeable future. Mother waited over a year after the case was filed to obtain drug treatment. And, the fact that she obtained treatment is no guarantee that she will be able to address her drug issues. During the pendency of the case, she tested positive for multiple substances on several occasions. Additionally, Mother's argument also overlooks the fact that she failed to complete other court orders. For example, she did not provide verification of stable housing or income. She did not keep in contact with the CSO or regularly attend visitation with her children. She did not complete a Safe Kids assessment or mental health assessment. Assuming she successfully finished drug treatment, it would still take time to complete the additional court orders. This time must be measured from the perspective of the children. Given that Mother failed to make progress on these court orders in the year prior to termination, the district court did not abuse its discretion in finding that Mother was unlikely to change in the foreseeable future.

Affirmed.