NOT DESIGNATED FOR PUBLICATION

Nos. 125,125
125,126
125,127

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interests of D.J., K.J., and J.J.,
Minor Children.

MEMORANDUM OPINION

Appeal from Thomas District Court; KEVIN BERENS, judge. Opinion filed November 4, 2022.
Affirmed.

*Craig L. Uhrich*, of Uhrich Law Firm P.A., of Oakley, for appellant natural mother.

*Leslie C. Beims*, of Goodland, for appellant natural grandmother.

*Todd R. Stramel*, of Stramel Law Firm, P.A., of Colby, for appellee.

Before GARDNER, P.J., WARNER and COBLE, JJ.

PER CURIAM: In August 2020 the district court adjudicated D.J., K.J., and J.J. children in need of care (CINC) and removed them from their mother's custody. When the case failed to progress positively, the State moved to terminate M.E.'s (Mother's) parental rights. In February 2022, the district court found by clear and convincing evidence that Mother was unfit, that her unfitness was unlikely to change in the foreseeable future, and that termination of Mother's parental rights was in the children's best interests. Mother appeals. After reviewing the record and finding no error, we affirm.

1

*Factual and Procedural Background*

Mother and T.J. (Father) had three children, D.J. (born in 2015), K.J. (born in 2014), and J.J. (born in 2011). In late 2016, Father, with whom Mother was no longer living, died in a car accident. Around July 2017, Mother began using methamphetamine. In September 2017, Mother sent all three children to live with their maternal grandmother because Mother "was not in the right mental state" and she had a "slight resentment" toward them because they looked like Father. Until June 2019 the children lived with their grandmother.

In March 2018, Mother's drug use led to her felony drug conviction, and she continued to use methamphetamine afterward. When Mother's continued drug use caused her to violate her probation, she was incarcerated from September 2018 to March or April 2019. According to Mother, in July 2019, the children returned to her care. At that time, she was in a relationship with a man named Charles, or "Chuck."

In March 2020, Mother's drug use landed her back in jail again. Mother had been previously convicted of obstruction—a felony, and the drug use was a violation of her probation. Mother had lied to law enforcement during their investigation of a domestic abuse incident between her and Chuck. Mother changed her initial statement to police, saying Chuck had threatened to "drag her behind the truck until her body was not even recognizable" if she did not change it. She was released from custody in April 2020.

Yet again, in June 2020, Mother was incarcerated because of her drug use. As a result, on June 29, the State of Kansas filed a CINC petition alleging that "[M]other is in and out of jail and consistently testing positive for meth. [Mother] is struggling to maintain her own mental health and is unable to provide the care necessary for her children." Mother did not contest those allegations and in August 2020, the district court

adjudicated all three children in need of care. The children remained in an out-of-home placement during this case, living mainly with Father's brother.

When the children arrived at their placement, their uncle described it as "[j]ust pandemonium." To him, "it seemed like they had never, like, been in a, like, family setting, to me, before." K.J. was wetting the bed frequently and having night terrors. K.J. also had "a weight issue" and was classified as "morbidly obese" at her first doctor's appointment at her placement. J.J. was on an Individualized Education Program (IEP) due to ADHD and anxiety, which required pulling him out of class for special instruction for long periods of his school day. D.J. struggled with crying and cussing at school.

But over time in their placement, the children's struggles began to subside. K.J.'s bedwetting "decreased significantly," as did her night terrors. Her weight entered a healthier range. J.J.'s IEP problematic behaviors decreased significantly, so he only needed half of the services he needed before placement. D.J.'s temperament improved.

Mother testified that her drug use began "in order to not kill" herself because of her battle with mental health after the death of her estranged husband, and it continued because she was in an abusive relationship with Chuck. As an example of Chuck's abuse, Mother stated that he had once strangled her to the point that she nearly became unconscious. Even so, one witness stated that Mother told her "I'm not very good with the parenting thing. I leave that up to Chuck". Eventually, Chuck moved out of Mother's residence, but his three children continued to live with her. Thus Mother and Chuck continued to have daily contact, typically consisting of 30-minute conversations.

Mother admitted knowing that her continued relationship with Chuck was impeding her ability to get her children back. The relationship between the two affected her mental health and her sobriety. The children's maternal grandmother testified that Mother would do well for a while and then it would "f[a]ll through" because Mother

3

resumed her relationship with Chuck. She found it "alarming" that Mother still had daily contact with Chuck—she did not think the children should be around him.

Mother did complete some case plan tasks. She was employed, maintained stable and appropriate housing, participated in some mental health services, completed an in-patient drug treatment program, signed all necessary releases, completed a parenting seminar, and participated in visitations with the children that "went well." In fact, a case worker reported:

> "Visits are going well. The case team has no concerns regarding [Mother's] ability to engage, interact, set limits, or discipline the children. [Mother] does well at setting limits and planning her time effectively to get the most out of her visit with her children. [The children] all enjoy the visits. [Mother] helps them with their homework, they talk, play games, watch [television], cook, etc."

Later, another case worker report confirmed, "visits continue to [go] well," and Mother continued to "demonstrate[] good parenting skills and practices, and demonstrates a strong, loving bond with her children."

Still, the children struggled. During visits with Mother, all three of them would go back to "talking like babies." And K.J. would go from happy and energetic to apathetic and quiet and returned to wetting the bed and having night terrors. The children were "confused" and "sad" because of how long the reintegration process was taking.

The trial testimony reflected that when Mother was sober, she was a good parent. Yet her sobriety was a "roller coaster." She could not stay sober. For example, although she completed an in-patient drug treatment program, she relapsed shortly after, in June 2021. In fact, she used methamphetamine just the week before the termination trial. The trial testimony reflects that her sobriety was the main roadblock keeping her from effectively parenting her children and achieving reintegration.

4

To accomplish the goal of reintegration, Saint Francis Ministries (SFM) tried to get Mother back into treatment after her relapse and offered "quite a few resources" to aid in her sobriety. But Mother did not use these resources and refused to go back to in-patient treatment because she did not think it would be helpful. SFM recommended that Mother get a drug and alcohol evaluation, but Mother also refused, claiming she could work through her drug issues on her own. Mother also refused to take seven drug tests, even though she knew refusal would impede her unsupervised visitation. Still, Mother continued to use methamphetamine.

The district court terminated Mother's parental rights to all three children. It found Mother unfit because of her inability to remain sober, her failure to respond to the rehabilitation efforts made by the State and SFM, and her lack of effort to adjust her own circumstances to meet the needs of her children. The district court also applied a statutory presumption of unfitness because the children had been in an out of home placement for more than a year but reinforced that "[t]he State has also met the burden by clear and convincing evidence [on] the factors stated above independent of the application of the presumption [of unfitness]."

To support its conclusion that Mother was unfit, the district court made several findings of fact. It held:  "The parent has willfully refused to carry out a reasonable, court-approved reintegration case plan, in part illustrated by [Mother's] refusal to submit to drug testing and refusal to participate in drug and alcohol treatment." As for Mother's drug use, the district court found

> "the [court-approved reintegration] plan included the requirements that Mother submit to random mouth swabs and UA's within 24 hours of request and that she participate in a drug and alcohol treatment; since July of 2021 through December 2021, Mother has willfully refused to take mouth swabs or UA's as requested and willfully refused to participate in drug treatment despite having relapsed in to using methamphetamine."

The court did acknowledge that Mother has employment, a suitable home, and is taking medication for her mental health, "but [she] continues to use meth such that she is sober 25 days out of 30." And although Mother testified that she was willing to restart her participation in drug treatment, "[t]estimony indicated it would take at least one year to 18 months before Mother might be able to properly care for the children if she attended treatment and thereafter maintained sobriety and mental health treatment." The district court thus found Mother presently unfit to care for the children and found this condition unlikely to change in the foreseeable future. The district court found that "one year to 18 months is not a reasonable time, when viewed from the perspective of the children, for Mother to become fit and able to care for the children." It also found that termination was in the best interests of the children. Accordingly, the district court terminated Mother's parental rights.

Mother timely appeals and this court consolidated the cases for appeal.

*Analysis*

On appeal Mother raises two arguments. First, she argues that the district court incorrectly applied a statutory presumption of unfitness. Second, Mother argues that there was insufficient evidence to support termination of her parental rights because she was successfully completing case plan tasks.

*Did the District Court Err in Applying a Statutory Presumption of Unfitness?*

Mother first argues that the district court erred by applying the presumption of unfitness found in K.S.A. 38-2271(a)(5). That statute establishes a presumption of parental unfitness if the state shows by clear and convincing evidence that the child has been in an out-of-home placement under court order for a period of one year or longer

6

and the parent has substantially neglected or willfully refused to carry out a reasonable plan, approved by the court, directed toward reintegration.

We decline to reach the merits of this issue because the district court did not solely rely on this presumption when finding Mother unfit. The district court's order terminating Mother's parental rights shows that the district court also found clear and convincing evidence of Mother's unfitness independent of the statutory presumption of unfitness. That order states: "The State has also met the burden by clear and convincing evidence [on] the factors stated above independent of the application of the presumption." Application of the statutory presumption in K.S.A. 38-2271(a)(5) was thus superfluous considering the district court's finding of unfitness based on factors in K.S.A. 38-2269(b)(3), (7), and (8). Those factors are (1) Mother's use of drugs, (2) the failure of reasonable efforts made by the State and agencies to rehabilitate the family, and (3) Mother's lack of effort to adjust her circumstances, conduct, or conditions to meet the needs of her children. We address Mother's challenges to these factors below.

*Did the District Court Properly Terminate Mother's Parental Rights?*

Mother argues insufficient evidence supports the termination of her parental rights. First, she argues that termination was improper because she was successfully completing her case plan tasks. Second, she argues that the district court should not have applied the presumption of unfitness in K.S.A. 38-2271(a)(5). Third, she argues that drug use is not a sufficient basis for termination of parental rights.

*Standard of Review and Summary of the District Court's Findings*

Parents have a constitutionally recognized fundamental right to a parental relationship with their children. *Santosky v. Kramer*, 455 U.S. 745, 753, 758-59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *In re B.D.-Y.*, 286 Kan. 686, 697-98, 187 P.3d 594

(2008). But that right is not absolute. It yields to the needs of the children when a parent is found to be unfit under our statutes.

Under K.S.A. 38-2269(a):

"When the child has been adjudicated to be a child in need of care, the court may terminate parental rights or appoint a permanent custodian when the court finds by clear and convincing evidence that the parent is unfit by reason of conduct or condition which renders the parent unable to care properly for a child and the conduct or condition is unlikely to change in the foreseeable future."

"If the court makes a finding of unfitness, the court shall consider whether termination of parental rights as requested in the petition or motion is in the best interests of the child." K.S.A. 38-2269(g)(1).

When this court reviews a district court's termination of parental rights, we consider "whether, after review of all the evidence, viewed in the light most favorable to the State, it is convinced that a rational factfinder could have found it highly probable, i.e., by clear and convincing evidence, that [the parent's rights should be terminated]." *In re B.D.-Y.*, 286 Kan. at 705. In *In re B.D.-Y.*, our Supreme Court explained that "clear and convincing evidence" requires the fact-finder to believe "that the truth of the facts asserted is highly probable." 286 Kan. at 697. "[T]he appellate court does not weigh conflicting evidence, pass on credibility of witnesses, or redetermine questions of fact." 286 Kan. at 705.

Under K.S.A. 38-2269(b), these factors are among those that a court can consider in determining a parent's unfitness:

"(1) Emotional illness, mental illness, mental deficiency or physical disability of the parent, of such duration or nature as to render the parent unable to care for the ongoing physical, mental and emotional needs of the child;

"(2) conduct toward a child of a physically, emotionally or sexually cruel or abusive nature;

"(3) the use of intoxicating liquors or narcotic or dangerous drugs of such duration or nature as to render the parent unable to care for the ongoing physical, mental or emotional needs of the child;

"(4) physical, mental or emotional abuse or neglect or sexual abuse of a child;

"(5) conviction of a felony and imprisonment;

"(6) unexplained injury or death of another child or stepchild of the parent or any child in the care of the parent at the time of injury or death;

"(7) failure of reasonable efforts made by appropriate public or private agencies to rehabilitate the family;

"(8) lack of effort on the part of the parent to adjust the parent's circumstances, conduct or conditions to meet the needs of the child; and

"(9) whether, as a result of the actions or inactions attributable to the parent and one or more of the factors listed in subsection (c) apply, the child has been in the custody of the secretary and placed with neither parent for 15 of the most recent 22 months beginning 60 days after the date on which a child in the secretary's custody was removed from the child's home."

Any single factor may alone be enough to terminate parental rights. K.S.A. 38-2269(f).

Finally, we judge these cases mostly on actions, not intentions:

"A parent may be labeled 'unfit' under the law even though he or she loves the child and wants to do the right thing, which may be the case here. But we must judge these cases based mostly upon actions, not intentions, and we must keep in mind that a child deserves to have some final resolution within a time frame that is appropriate from that child's sense of time." *In re A.A.*, 38 Kan. App. 2d 1100, 1105, 176 P.3d 237 (2008).

In making its finding of unfitness, the district court applied these factors under K.S.A. 38-2269(b):

- Mother's use of a narcotic or dangerous drugs of such duration or nature as to render her unable to care for the ongoing physical, mental, or emotional needs of the children—K.S.A. 38-2269(b)(3);
- Failure of reasonable efforts made by appropriate public or private agencies to rehabilitate the family—K.S.A. 38-2269(b)(7); and
- Lack of effort on the part of Mother to adjust her circumstances, conduct, or conditions to meet the needs of the children—K.S.A. 38-2269(b)(8).

*Mother's Completion of Case Plan Tasks*

First, Mother argues that termination was improper because she was successfully completing her case plan tasks. We agree that Mother did many of the tasks assigned to her. At the time of the termination, Mother had completed in-patient drug treatment, cognitive behavior therapy, and a reintegration parenting program. She was employed, was maintaining suitable housing, and had completed the releases SFM requested. Additionally, visitation with the children was going well.

Yet one case plan task loomed large—Mother's sobriety. Although Mother completed court orders during the 18-month pendency of the children's cases, she did not make any lasting progress in the area that presented her biggest hurdle in parenting her children. She refused to submit as requested to UAs seven times and continued to relapse and use methamphetamine, even as recently as a week before the termination trial, all while knowing that her sobriety was the key to reintegration with her children.

Mother did not show a concerted willingness to address her addiction issues. Although she completed in-patient drug treatment once, she then began using

10

methamphetamine again and refused to return to in-patient drug treatment. A case worker testified that Mother did not think inpatient treatment would be helpful because she had already been there and done that. Mother's unwillingness to reenter treatment shows a lack of effort on her part to change her circumstances to meet the needs of her children. The evidence was sufficient to support a finding of Mother's unfitness under K.S.A. 38-2269(b)(3), (7), and (8).

Based on "child time," when we view these facts in their totality, sufficient evidence supports the district court's separate finding that it was unlikely that Mother's condition would change in the foreseeable future. The testimony proved it would take Mother over a year to regain sober status and to be able to adequately mother her children. The children were already struggling with the uncertainty and length of the reintegration process. Mother's inaction toward her sobriety during the case showed that she made no major change in her pattern of behavior. Mother's past conduct may be used as an indicator of her future behavior. See *In re Price*, 7 Kan. App. 2d 477, 483, 644 P.2d 467 (1982); *In re M.T.S.*, No. 112,776, 2015 WL 2343435, at *8 (Kan. App. 2015) (unpublished opinion) ("Parental unfitness can be judicially predicted from a parent's past history."). Mother's long history of substance abuse, coupled with her use of methamphetamine only a week before trial, showed that she was either not willing or not able to comply in the foreseeable future. Mother has had longstanding difficulties remaining drug free during her children's lives, and her inability to change in the past supports the conclusion that Mother's drug use will not change in the foreseeable future.

Mother tries to undercut these proper findings in two ways. First, Mother argues the district court should not have applied the presumption of unfitness in K.S.A. 38-2271(a)(5). But as we found above, application of this presumption is unnecessary, because the district court properly applied other statutory factors of unfitness which are supported by sufficient evidence.

11

Second, Mother argues that drug use alone is not a sufficient basis for termination of parental rights. Yet our Legislature has stated that any single factor listed in (a) alone may establish grounds for the termination of parental rights. K.S.A. 38-2269(f). And drug use is one such factor. See K.S.A. 38-2269(3) "the use of . . . narcotic or dangerous drugs of such duration or nature as to render the parent unable to care for the ongoing physical, mental or emotional needs of the child."

To this, Mother replies that the State failed to show that her drug use made her unable to care for the needs of her children. Mother argues that when she is sober, she is a good mother to her children. We agree that the record may support that assertion. But being sober only 25 of 30 days a month is not enough. Children need adequate parenting every day. And the children's behavior or demeanor after they were placed with their uncle shows substantial improvement over those traits while they were with Mother. Clear and convincing evidence shows that the children's physical, mental, and emotional health would be harmed in delaying permanency, and termination of Mother's parental rights was in the best interests of the children.

The district court properly terminated Mother's parental rights.

Affirmed.