NOT DESIGNATED FOR PUBLICATION

No. 126,612

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interests of K.S., K.R., K.S., and K.S.,
Minor Children.

MEMORANDUM OPINION

Appeal from Saline District Court; JACOB PETERSON, judge. Submitted without oral argument. Opinion filed January 12, 2024. Affirmed.

*Laurel M. Driskell*, of Kennedy Berkley, of Salina, for appellant natural mother.

*Nathan L. Dickey*, assistant county attorney, for appellee.

Before ATCHESON, P.J., MALONE and BRUNS, JJ.

PER CURIAM: The natural mother (Mother) of four minor children appeals the termination of her parental rights. On appeal, Mother contends that there is not sufficient evidence in the record to support the termination of her parental rights. She argues that there is insufficient evidence to find that she is unfit to parent her children. Based on our review of the record on appeal, we find that there is sufficient evidence to establish by clear and convincing evidence that Mother is unfit and that the condition of unfitness is unlikely to change in the foreseeable future. In particular, we find clear and convincing evidence in the record to support a finding of unfitness under K.S.A. 38-2269(b)(7) and (b)(8). Moreover, we find that the termination of Mother's parental rights is in the best interests of the minor children. As a result, we conclude that the district court did not err in terminating her parental rights. Thus, we affirm.

1

On August 23, 2021, the Kansas Department of Children and Families (DCF) removed K.S. (born in 2012), K.R. (born in 2015), K.S. (born in 2018), and K.S. (born in 2020) from the home of former foster parents with whom Mother had left them two days earlier. A few days later, the State filed a child in need of care (CINC) petition, and the district court entered an ex parte order placing the children into protective custody. In making this decision, the district court noted that the children had previously been in the custody of the State and had only returned to their Mother earlier that summer.

At a temporary custody hearing held on September 1, 2021, the district court found probable cause to believe that the allegations in the CINC petition were true and placed the children in the temporary custody of DCF. The following month, the district court adjudicated the four children to be in need of care. All four children were placed together in the home of foster parents who had cared for the children during a previous CINC case. They remained in that placement during the pendency of this case.

At a permanency hearing held on October 6, 2022, the district court found that reintegration was no longer viable. A few weeks later, the State moved to terminate Mother's parental rights and later amended its motion on two occasions. The second amended motion was filed to add a previously unknown father as a party. However, the children's fathers are not parties to this appeal.

On April 26, 2023, the district court held an evidentiary hearing on the motion to terminate Mother's parental rights. At the hearing, the State presented the testimony of William Carr, a child protection specialist with DCF, who had investigated Mother and her living conditions. The State then called Lori McNelly, who is a permanency specialist and case manager with St. Francis Ministries.

McNelly testified about her work with the family since June 2022 as well as her development of a case plan in an attempt to reintegrate the children with Mother. McNelly testified that there were concerns with Mother's mental health, instability in her living arrangements, and inability to maintain employment. In McNelly's opinion, Mother had difficulty making parenting decisions "that were safe and appropriate for the children."

McNelly also testified about Mother's failure to complete the requirements of her case plan relating to seeking help for her mental health issues. McNelly testified that "[t]here would be gaps in between [Mother's] therapy that would be 8 weeks, 6 weeks, 7 weeks, where she was not attending appointments. It got to the point where the Mental Health center canceled her appointments for her noncompliance and inconsistency and took her off the appointment schedule."

Further, McNelly testified that Mother failed to complete family therapy as required by the case plan. In discussing Mother's inability to maintain stable housing, McNelly testified that Mother lived with a former boyfriend in his residence. McNelly described the living conditions as "volatile" and opined that "it's not a safe and stable home." Also, McNelly testified that although Mother and her boyfriend were required under the case plan to participate in couples counseling, they were unable to do so because the boyfriend failed to follow through with receiving individual therapy for his underlying issues.

Additionally, McNelly testified that Mother failed to maintain consistent employment as required by the case plan. According to McNelly, Mother's employment was sporadic, and she never provided proof of income to show that she could adequately provide for the needs of her four children. McNelly also pointed out that Mother failed to complete parenting classes as required by the case plan. Although Mother went to two

classes, she failed to complete the course. McNelly also explained that Mother failed to follow up on locating appropriate childcare for the youngest child.

McNelly testified that Mother's visitation with the children was still supervised at the time of the termination hearing, and she had failed to complete a journal in which she would document her visits with the children and describe how she handled things. Based on her work with the family, McNelly opined that she "would be concerned for [the children's] safety and wellbeing" if reintegrated with Mother. McNelly was also concerned because Mother had not provided documentation that she was receiving mental health services that would be necessary for successful reintegration.

Next, Mother testified on her own behalf regarding the case plan as well as what she had done to complete the assigned tasks. She testified regarding her living conditions, her employment, and her mental health. Even though she contended that she maintained a safe and stable living environment, Mother admitted on cross-examination that she had been arrested just a couple of days prior to the hearing. She testified that it was related to a "domestic violence case" but exercised her Fifth Amendment right not to testify about the details. Nevertheless, she testified that she intended to move out of her boyfriend's residence. Mother also testified on cross-examination that she had been arrested in the past month for driving under the influence (DUI) and admitted that it was not her first DUI.

At the close of evidence, the district court reviewed the evidence on the record. After doing so, the district court concluded that the State had proven Mother's unfitness by clear and convincing evidence and that the condition is unlikely to change. The district court also concluded that the termination of Mother's parental rights "is in the best interest[s] of the children based on the children's physical, mental and emotional wellbeing." In reaching this conclusion, the district court found that "the children need . . . stability."

On May 12, 2023, the district court entered a journal entry setting forth the reasons for its decision. In the journal entry, the district court found that "[t]he evidence is clear and convincing that [Mother is] unfit by reason of conduct or condition which renders [her] unable to care properly for [the children] and the conduct or condition is unlikely to change in the foreseeable future." Specifically, the district court found that its determination was based on K.S.A. 38-2269(b)(1), (b)(7), (b)(8), and (b)(9). Finally, the district court determined that "termination of parental rights is in the best interests of the [children] and the physical, mental or emotional needs of the [children] would best be served by termination of parental rights."

Thereafter, Mother timely appealed.

ANALYSIS

The sole issue presented on appeal is whether there is sufficient evidence in the record to support the district court's decision to terminate Mother's parental rights. Mother contends that she reasonably carried out the requirements of the case plan approved by the district court. Likewise, she contends that the record lacks sufficient evidence of her unfitness to parent. In response, the State contends that the district court properly terminated Mother's parental rights based upon clear and convincing evidence of her unfitness.

After a child has been adjudicated to be a child in need of care, a district court may terminate a parent's rights if it finds by clear and convincing evidence that the parent is unfit by reason of conduct or condition which renders the parent unable to properly care for the child and that the conduct or condition of unfitness is unlikely to change in the foreseeable future. K.S.A. 38-2269(a). On appeal, a district court's decision to terminate a parent's rights will be upheld if—after reviewing all the evidence in the light most favorable to the prevailing party—we find that the district court's factual findings are

5

supported by clear and convincing evidence. In reviewing the evidence, we are not to reweigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact. *In re Adoption of Baby Girl G.*, 311 Kan. 798, 806, 466 P.3d 1207 (2020), *cert. denied* 141 S. Ct. 1464 (2021).

In its journal entry, the district court found that the evidence supported its findings that Mother was unfit under K.S.A. 38-2269(b)(1), (b)(7), (b)(8) and (b)(9), which state:

> "(b) In making a determination of unfitness the court shall consider, but is not limited to, the following, if applicable:
>
> (1) Emotional illness, mental illness, mental deficiency or physical disability of the parent, of such duration or nature as to render the parent unable to care for the ongoing physical, mental and emotional needs of the child;
>
>  . . . .
>
> (7) failure of reasonable efforts made by appropriate public or private agencies to rehabilitate the family;
>
> (8) lack of effort on the part of the parent to adjust the parent's circumstances, conduct or conditions to meet the needs of the child; and
>
> (9) whether, as a result of the actions or inactions attributable to the parent and one or more of the factors listed in subsection (c) apply, the child has been in the custody of the secretary and placed with neither parent for 15 of the most recent 22 months beginning 60 days after the date on which a child in the secretary's custody was removed from the child's home."

We pause to note that the district court discussed several other factors on the record at the conclusion of the termination hearing. But a signed order of a district court controls over a corresponding oral recitation in civil cases. *Steed v. McPherson Area*

*Solid Waste Utility*, 43 Kan. App. 2d 75, 87, 221 P.3d 1157 (2010). Our court has consistently applied this principle to district court decisions under the Revised Kansas Code for Care of Children, K.S.A. 38-2201 et seq. See *In re R.J.*, No. 122,230, 2021 WL 137346, at *10 (Kan. App. 2021) (unpublished opinion) (termination of parental rights); *In re I.G.*, No. 122,010, 2020 WL 2296918, at *2 (Kan. App. 2020) (unpublished opinion) (termination of parental rights); *In re N.M.*, No. 118,652, 2018 WL 2749803, at *8 (Kan. App. 2018) (unpublished opinion) (child in need of care finding).

Accordingly, we will look to the reasons set forth by the district court in its journal entry. Specifically, we will focus on the district court's determination that Mother is unfit under K.S.A. 38-2269(b)(7) and (b)(8). Based on our review of the record on appeal in a light most favorable to the State as the prevailing party, we find that that there is clear and convincing evidence upon which one could conclude that Mother failed to make reasonable efforts to complete the assigned tasks under the case plan to rehabilitate the family. See K.S.A. 38-2269(b)(7). In addition, we find that there is clear and convincing evidence upon which one could conclude that Mother displayed a lack of effort to adjust her circumstances or conduct to meet the basic needs of her children. See K.S.A. 38-2269(b)(8).

Mother does not dispute that DCF, St. Francis Ministries, and the district court made reasonable efforts to reintegrate the children into her care. Rather, she argues that she made significant progress in completing the assigned tasks in the case plan. In other words, she asserts that she has not failed to make reasonable efforts to complete the requirements of the case plan approved by the district court.

Nevertheless, a review of the record on appeal reveals that there is evidence that is both clear and convincing upon which a reasonable fact-finder could conclude that Mother failed to complete the tasks assigned to her in the case plan. In particular, there is evidence in the record which is sufficient to establish that Mother failed to maintain

stable employment and a safe housing situation. Although we have no doubt that Mother loves her children and desires reintegration with them, the record clearly and convincingly reveals that many of the tasks assigned to her remained uncompleted.

While Mother highlights the few positive steps she took to complete the case plan, she downplays the significant evidence presented by the State to establish her unfitness. As the record reveals, this case has been going on for a long period of time and several of the children had previously been in the State's custody for nearly two years. In fact, they had only been reintegrated with Mother for about two months before she left the children with their foster parents. Thus, we conclude that the district court did not err in determining that Mother did not make the required efforts to satisfy K.S.A. 38-2269(b)(7).

Turning to K.S.A. 38-2269(b)(8), a review of the record reveals not only Mother's lack of compliance with the tasks assigned under the case plan but also her continuing to live in an unstable environment with her boyfriend and—only days before the termination hearing—being arrested on a charge relating to a domestic violence case. In addition, shortly before the hearing she had been arrested for a DUI. She has not adjusted her circumstances or conduct to meet the needs of her children. Accordingly, when viewed in a light most favorable to the State, we do not find it to be unreasonable for the district court to find by clear and convincing evidence that Mother failed to change her conduct or conditions in order to meet the needs of her minor children.

Because we conclude that the district court did not err in finding by clear and convincing evidence that Mother was unfit under K.S.A. 38-2269(b)(7) and (b)(8), it is unnecessary for us to review whether there is also clear and convincing evidence in the record to support the district court's determination that Mother was also unfit under K.S.A. 38-2269(b)(1) and (b)(9). This is because any one of the statutory factors— standing alone—can be sufficient to find a parent to be unfit. See K.S.A. 38-2269(f).

Furthermore, we note that Mother does not challenge the district court's determination that her unfitness is unlikely to change in the foreseeable future or that the termination of her parental rights is in the best interests of the children.

In summary, we recognize that Mother desires reintegration with her children. Likewise, we do not discount her good intentions wanting to now take the steps necessary to be reintegrated with her children. "But we must judge these cases based mostly upon actions, not intentions, and we must keep in mind that a child deserves to have some final resolution within a time frame that is appropriate from that child's sense of time." *In re A.A.*, 38 Kan. App. 2d 1100, 1105, 176 P.3d 237 (2008). Consequently, we affirm the district court's decision to terminate Mother's parental rights in this case.

Affirmed.