NOT DESIGNATED FOR PUBLICATION

No. 123,294

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Interest of R.C.,
A Minor Child.

MEMORANDUM OPINION

Appeal from Geary District Court; RYAN W. ROSAUER, judge. Opinion filed June 18, 2021. Affirmed.

*Anita Settle Kemp*, of Wichita, for appellant.

*Michelle L. Brown*, assistant county attorney, for appellee.

Before ARNOLD-BURGER, C.J., BUSER, J., and MCANANY, S.J.

PER CURIAM: This is an appeal by Mother of the district court's order terminating her parental rights to her infant child, R.C. Mother contends there was insufficient evidence to support the district court's findings that she was unfit to parent R.C., and that this unfitness would continue for the foreseeable future. Upon our independent review of the evidence presented at the termination hearing, we conclude that the district court did not err in its ruling. We affirm the district court's parental termination order.

FACTUAL AND PROCEDURAL BACKGROUND

On July 10, 2019, the State filed a petition alleging that R.C., a newborn infant born in 2019, was a child in need of care. The State alleged that R.C. was born with cocaine, methamphetamine, and amphetamine in her system. For her part, Mother tested positive for cocaine, methamphetamine, and barbiturates. Mother acknowledged

1

ingesting cocaine several days prior to the birth but denied knowing how the baby could have tested positive for other substances. Mother had not obtained prenatal care for R.C., and the child's biological father was never determined. The district court entered an emergency order placing custody of R.C. in out-of-home placement with the Kansas Department for Children and Families (DCF).

Following a concerted effort to address Mother's drug addiction and inadequate parenting skills, an adjudication hearing was held on March 4, 2020. At that hearing Mother entered a no contest stipulation that R.C. was a child in need of care. By June 24, 2020, based on progress reports, the district court determined that reintegration with the family was no longer a viable option. As a result, on July 15, 2020, the State filed a motion to terminate Mother's parental rights.

An evidentiary termination hearing was held on August 28, 2020. Ten witnesses appeared on behalf of the State and Mother testified on her own behalf. At the conclusion of the evidence, the district court terminated Mother's parental rights to R.C. stating:

> "[The] Court makes the following legal and factual findings: The evidence is clear and convincing that the mother, father or putative father, is unfit by reason of conduct and condition which render them unable to properly care for the child, initials R.C., born 2019, and the conduct and conditions are unlikely to change in the foreseeable future. Regarding the father, he is unknown, and cannot be ascertained despite the parties' diligent searching, and he has not come forward in the almost 14 months since the child was born.
>
> "Regarding Mother, there are a couple of general categories of findings this Court is making regarding her unfitness, findings the Court makes based on the State proving the below by clear and convincing evidence. First, particular to this case, Mother continues to use narcotic and dangerous drugs to such a duration and of such a nature that the mother is unable to care for the child. Second—and this is in the first general group— Mother has failed to carry out a reasonable plan this Court approved which was directed toward the reintegration of the child into the mother's home.

"The second general area of findings this Court makes that the State has proven by clear and convincing evidence, is that the mother has been previously found to be an unfit parent in proceedings under Kansas Statutes Annotated 38-2266 et sequitur, and amendments thereto. Also, the child has been in out-of-home placement under Court order for over a year. And Mother has substantially neglected, if not willfully refused, to carry out a reasonable plan this Court approved which had been directed toward the reintegration of the child into the parental home. Mother has not rebutted, by a preponderance of the evidence, these presumptions.

"The evidence suggests that the failure of Mother to comply with this Court's orders are part of a continuing course of conduct going back to at least the CINC hearings for her five oldest children in 2011. They began in 2011. And, of course, the final hearing that terminated the rights in those cases in Dickinson County was in 2012. She continues to associate with a known drug offender, someone who has provided her drugs in the past, probably relatively recent past, as in earlier this year. She has failed to participate, and continues to fail to participate, in the drug treatment this Court has ordered. She has been given multiple opportunities, and has chosen to either not start the treatment, or start the treatment but failed to adequately participate in the treatment.

"This Court does not believe she will ever comply with these orders. Even now, there is no plan for her to go into inpatient treatment, which is what she needs, and what she refuses to acknowledge. In considering the physical, mental, and emotional health of the child, termination of parental rights is in the best interests of the child, and the physical, mental, and emotional needs of the child are best served by this Court terminating parental rights."

Mother filed a timely appeal.

INTRODUCTION

We begin the analysis with a summary of Kansas law pertaining to child in need of care proceedings and our appellate standard of review.

If a child has been adjudicated a child in need of care, a court may terminate parental rights "when the court finds by clear and convincing evidence that the parent is

3

unfit by reason of conduct or condition which renders the parent unable to care properly for a child and the conduct or condition is unlikely to change in the foreseeable future." K.S.A. 2020 Supp. 38-2269(a). After making a finding of unfitness, the court must consider whether the termination is in the best interests of the child. K.S.A. 2020 Supp. 38-2269(g)(1). In making this determination, the court must "give primary consideration to the physical, mental and emotional health of the child." K.S.A. 2020 Supp. 38-2269(g)(1).

When an appellate court reviews a district court's termination of parental rights, it considers "'whether, after review of all the evidence, viewed in the light most favorable to the State,'" it is "'convinced that a rational factfinder could have found it highly probable, *i.e.*, by clear and convincing evidence, that the parents' right should be terminated.'" *In re K.H.*, 56 Kan. App. 2d 1135, 1139, 444 P.3d 354 (2019). In reviewing a district court's decision based on a clear and convincing evidence standard, "an appellate court does not weigh conflicting evidence, pass on the credibility of witnesses, or redetermine questions of fact." 56 Kan. App. 2d at 1139 (citing *In re B.D.-Y.*, 286 Kan. 686, 705, 187 P.3d 594 [2008]).

K.S.A. 2020 Supp. 38-2269(b) and (c) list several factors that a district court shall consider in making a finding of unfitness. In this appeal, the district court's findings align with subsections (b)(3) ("the use of intoxicating liquors or narcotic or dangerous drugs of such duration or nature as to render the parent unable to care for the ongoing physical, mental or emotional needs of the child") and (c)(3) ("failure to carry out a reasonable plan approved by the court directed toward the integration of the child into the parental home").

There are also certain circumstances that establish a presumption of unfitness. In this appeal, the district court found that two presumptions were applicable: (1) Mother had previously been found unfit in a termination of parental rights proceeding, K.S.A.

4

2020 Supp. 38-2271(a)(1); and (2) R.C. had been in an out-of-home placement for over a year and Mother had substantially neglected or willfully refused to carry out a reasonable plan, approved by the court, directed toward reintegration of R.C. in her home, K.S.A. 2020 Supp. 38-2271(a)(5).

Procedurally, once a presumption is established, "[t]he burden of proof is on the parent to rebut the presumption of unfitness by a preponderance of the evidence." K.S.A. 2020 Supp. 38-2271(b). If the parent fails to provide evidence that he or she "is presently fit and able to care for the child or that the parent will be fit and able to care for the child in the foreseeable future," then the district court must terminate the person's parental rights. K.S.A. 2020 Supp. 38-2271(b).

In summary, in this case the district court found four statutory grounds of unfitness to justify terminating Mother's parental rights to R.C. On appeal, however, Mother only challenges the two presumptions the district court found in K.S.A. 2020 Supp. 38-2271. Mother does not brief the two other statutory factors the district court found were applicable under K.S.A. 2020 Supp. 38-2269(b) and (c). The existence of any one of those two factors standing alone may, but does not necessarily, establish grounds for termination of parental rights. K.S.A. 2020 Supp. 38-2269(f).

Mother's failure to appeal the other two statutory factors found by the district court is consequential. When a district court provides an alternative ground to support its ultimate ruling on an issue and an appellant fails to challenge the validity of the alternative ground on appeal, an appellate court may decline to address the appellant's challenge to the district court's ruling. *National Bank of Andover v. Kansas Bankers Surety Co.*, 290 Kan. 247, 280, 225 P.3d 707 (2010). However, given the importance of the parental termination order and the substantial evidence supporting the four grounds for termination found by the district court, we will individually address the four grounds upon which the district court based its order.

5

## USE OF INTOXICATING LIQUORS OR DANGEROUS DRUGS
### (K.S.A. 2020 Supp. 38-2269[b][3])

K.S.A. 2020 Supp. 38-2269(b)(3) lists the following factor as a basis for a finding of parental unfitness: "the use of intoxicating liquors or narcotic or dangerous drugs of such duration or nature as to render the parent unable to care for the ongoing physical, mental or emotional needs of the child."

In this case, the district court explicitly found this factor warranted parental termination. The district court stated that Mother "continue[d] to use narcotic and dangerous drugs to such a duration and of such a nature the mother [was] unable to care for the child." Our review of the record confirms that clear and convincing evidence supported this finding.

Mother had an extensive history with DCF that included substance abuse issues and domestic violence. Mother birthed eight children, including R.C. All eight children were born with drugs in their system.

As part of Mother's reintegration plan, the district court ordered her to complete a Regional Alcohol and Drug Assessment Center (RADAC) assessment and follow all recommendations. Mother completed the assessment on July 11, 2019. Based on the assessment, RADAC recommended inpatient treatment. A RADAC counselor helped Mother secure an appointment at an inpatient facility in Lawrence, Kansas for August 9, 2019. But Mother was adamant that she would not participate in inpatient treatment because she thought it would hinder the reintegration process. According to Mother, outpatient treatment was sufficient and she "was able to do this on [her] own."

Mother began level two outpatient treatment on August 6, 2019 in Junction City. In October 2019 her treatment team discharged her with the recommendation that she transfer to level one treatment. Mother tested negative for prohibited substances between August 2019 and early December 2020.

On December 12, 2019, Mother tested positive for ingesting cocaine. Consequently, her visit with R.C. was canceled. Mother's contacts with her caseworkers declined and became sporadic during this time. Mother did not provide a requested drug test again until February 3, 2020. The test result was positive for cocaine use. Due to Mother's refusal to complete other drug testing, her visits with R.C. were canceled. Mother finally had two monitored visits with R.C. in February 2020 after providing negative drug test results.

Due to her relapse, Mother was asked to complete another RADAC assessment. Mother did not show up for the assessment on April 29, 2020, so it was rescheduled for the next day. During that assessment, Mother reported using crack cocaine and marijuana daily. The testing counselor recommended that Mother attend level three inpatient treatment and provided her with a referral to three inpatient drug treatment providers. Mother selected City on A Hill located in Marienthal, Kansas.

Mother was scheduled to arrive at the facility on May 19, 2020, but she arrived nine days later. Upon arrival, she was under the influence, and drug testing revealed she had ingested cocaine and marijuana. Mother was discharged from the program due to her noncompliance on June 5, 2020. During her inpatient treatment, Mother was disruptive in class and was the subject of several complaints. She had difficulty adhering to the schedule and staying awake. She also complained frequently. Mother seemed more concerned about things other than obtaining treatment for her addiction. When Mother found out she was pregnant she became more distracted. Although she was provided with several opportunities to improve her behaviors prior to discharge for noncompliance,

7

Mother did not take advantage of those opportunities. City on A Hill arranged for Mother to obtain treatment at CKF Addiction Treatment, another residential inpatient facility.

Mother was scheduled to report to CKF on June 11, 2020, but she did not appear until four days later. At trial, Mother explained that she was late because she had experienced a miscarriage, passed out and hit her head, which resulted in her hospitalization for emergency surgery. Mother's behavior during her inpatient stay at CKF was not conducive to rehabilitation. During her stay, Mother had "an ongoing pattern of all or nothing thinking, unmanaged emotions, extreme behavior or threats, and a preoccupation with blaming others." After receiving several complaints from patients that Mother was instigating problems and making threats, her treatment team decided to discharge her on July 6, 2020, without having successfully completed the program. CKF recommended that Mother complete a level three inpatient treatment program and complete her reintegration through an Oxford House, a group home for individuals with substance abuse issues.

During the proceedings, concerns were raised regarding Mother's relationship with Delvone Roberts. Roberts was listed as R.C.'s father on her birth certificate, although that was later disproven by paternity testing. Roberts had a history of drug convictions, including some recent convictions. At the beginning of the CINC proceedings, Mother informed a caseworker that Roberts was abusive toward her and supplied her with drugs. In July 2020 a caseworker saw Mother at a gas station with Roberts. At the termination hearing, Mother admitted that she still associated with Roberts but denied that he used drugs around her.

Mother provided negative drug screens between July 30, 2020, and the termination hearing on August 28, 2020. At the time of the termination hearing, Mother was doing intensive outpatient treatment three times a week for three hours a day, living in an

Oxford House, attending its meetings, and participating in Narcotics Anonymous and Alcoholics Anonymous meetings.

On appeal, Mother emphasizes that she maintained sobriety between August 2019 and December 2019 and again for a few months prior to the termination hearing. However, Mother's periods of sobriety were relatively brief in the context of her long history of drug abuse and the adverse impact that it had on her parental rights as to five of her other children. Mother also failed to complete the recommended inpatient treatment that could help her begin to deal with her lengthy and serious drug issues.

The overarching concern in this case was Mother's longstanding drug abuse and its deleterious effects on her parenting abilities. Considering the totality of the testimony and exhibits presented at the termination hearing, there was clear and convincing evidence that Mother's use of narcotic or dangerous drugs was of such duration or nature as to render her unable to care for the ongoing physical, mental, or emotional needs of R.C. now or in the foreseeable future. See K.S.A. 2020 Supp. 38-2269(b)(3). This factor alone justified termination of Mother's parental rights.

FAILURE TO CARRY OUT A REASONABLE PLAN DIRECTED TOWARD FAMILY INTEGRATION
(K.S.A. 2020 Supp. 38-2269[c][3])

K.S.A. 2020 Supp. 38-2269(c)(3) lists the following factor as another basis for a finding of parental unfitness: "failure to carry out a reasonable plan approved by the court directed toward the integration of the child into the parental home." At the conclusion of the termination hearing, the district court ruled that "Mother has failed to carry out a reasonable plan this Court approved which was directed toward the reintegration of the child into the [M]other's home." Upon our review of the record, we find clear and convincing evidence to support this finding.

9

As detailed earlier, Mother repeatedly failed to comply with the district court's orders to obtain and successfully complete treatment for illicit drug use. Evidence showed the deliberate nature of this lack of cooperation. On at least one occasion, Mother informed Danielle Liptrot, a staff member of St. Francis reintegration services, that she was not going to attend outpatient treatment even though she understood this was a court order.

Another task of the case plan was for Mother to participate with Infant/Toddler Services (ITS). This special education program is designed to work with families and infants or toddlers with special needs. R.C. was referred to the program because she was in foster care and had prenatal drug exposure. Importantly, Mother declined to consent to an evaluation which was required for R.C. to receive services. After weeks of delay, authorization was obtained from the foster parents. Still, Mother's noncompliance with the court-ordered case plan was apparent and to the child's detriment.

Mother also failed to successfully complete other case plan tasks. For example, she was ordered to complete a parenting class. Although St. Francis staff made several referrals for Mother to attend parenting classes, Mother never attended a class. At the time of the termination hearing, Mother remained unemployed and began attending vocational training only a couple months before the termination hearing. Mother never provided proof of income to her caseworkers. She testified at the termination hearing that she planned on working at a temporary job at Geary Community Hospital starting a few days after the termination hearing. Despite the district court's order, Mother did not maintain long term stable housing. Lastly, despite diagnoses of posttraumatic stress disorder, depression, anxiety, and ADHD, Mother did not regularly obtain mental health services at Pawnee Mental Health Center and, as a result, was discharged due to too many missed appointments.

10

In summary, there was clear and convincing evidence to support the district court's finding that Mother failed to carry out a reasonable plan approved by the court directed toward the integration of R.C. into Mother's home, and this failure was unlikely to change in the foreseeable future.

PRESUMPTION OF UNFITNESS BASED ON PRIOR FINDING OF UNFITNESS
(K.S.A. 2020 Supp. 38-2271[a][1])

The district court also found a statutory presumption of unfitness as described in K.S.A. 2020 Supp. 38-2271(a)(1). That statute provides:

"(a) It is presumed in the manner provided in K.S.A. 60-414, and amendments thereto, that a parent is unfit by reason of conduct or condition which renders the parent unable to fully care for a child, if the state establishes by clear and convincing evidence, that:

"(1) A parent has previously been found to be an unfit parent in proceedings under K.S.A. [2020 Supp.] 38-2266 et seq., and amendments thereto, or comparable proceedings under the laws of another jurisdiction."

Upon a finding of a statutory presumption of unfitness by clear and convincing evidence the burden of proof shifts to the parent. K.S.A. 2020 Supp. 38-2271(b) provides:

"The burden of proof is on the parent to rebut the presumption of unfitness by a preponderance of the evidence. In the absence of proof that the parent is presently fit and able to care for the child or that the parent will be fit and able to care for the child in the foreseeable future, the court shall terminate parental rights in proceedings pursuant to K.S.A. 2020 Supp. 38-2266 et seq., and amendments thereto."

The district court ruled that the State had proven by clear and convincing evidence that Mother was previously found to be an unfit parent. The district court also found that

11

Mother had not rebutted the presumption of unfitness by a preponderance of evidence. In particular, the district court found:

> "The evidence suggests that the failure of Mother to comply with this Court's orders [is] part of a continuing course of conduct going back to at least the CINC hearings for her five oldest children in 2011. They began in 2011. And, of course, the final hearing that terminated the rights in those cases in Dickinson County was in 2012."

On appeal, Mother does not contest the applicability of the presumption of unfitness based on her prior parental terminations in 2012. Instead, she challenges the district court's finding that she failed to rebut the presumption of unfitness by a preponderance of evidence. In particular, she argues that "the court failed to consider the fact that she had never been provided the opportunity to attend treatment." Mother points to her testimony that prior to R.C.'s child in need of care proceeding, she had never been afforded a treatment plan for her drug abuse. Yet, in this case, the district court read from the 2012 journal entry terminating her parental rights which stated that "the natural mother has continued to abuse drugs and failed to follow an appropriate treatment plan."

While Mother contests this fact, based on the 2012 journal entry there is evidence that seven years before R.C.'s birth, Mother failed to avail herself of drug abuse treatment which resulted, in part, in the termination of her parental rights to five of her children. Moreover, Mother admits in her briefing that following the 2012 termination proceedings she "affirms the fact she continued to use illegal drugs until R.C. was born." Moreover, as detailed earlier, since the CINC litigation relating to R.C. began, Mother has repeatedly disregarded district court orders by using illicit drugs and failing to successfully complete an in-patient drug treatment program. Given the long duration of this evidence of drug abuse without Mother's ability or willingness to control her addiction, we can find no error in the district court's finding that Mother did not overcome the presumption of unfitness on this basis, alone.

12

PRESUMPTION OF UNFITNESS BASED ON R.C. BEING IN AN OUT-OF-HOME PLACEMENT FOR ONE YEAR, AND MOTHER'S FAILURE TO CARRY OUT THE COURT'S REINTEGRATION PLAN (K.S.A. 2020 Supp. 38-2271[a][5])

Once again, on appeal, Mother does not contest that R.C. has been in an out-of-home placement for a year or more. But she contends she rebutted the presumption of unfitness by a preponderance of evidence. In particular, she highlights evidence that she "substantially complied" with the district court's case plan orders relating to drug treatment. She also points to testimony that she is currently participating in mental health treatment, working with vocational rehabilitation to obtain full-time employment, obtaining reinstatement of her driver's license, acquiring a car, and saving money.

As thoroughly discussed earlier, there was clear and convincing evidence presented that Mother did not comply with her court-ordered reintegration plan. While on appeal Mother highlights the few instances where she partially complied with the district court's orders or at least attempted compliance; however, her failure to obtain inpatient drug treatment and curtail her years of illicit drug abuse, her refusal to allow R.C. to participate in ITS, her failure to obtain fulltime employment, her inability to maintain long term stable housing, her failure to regularly obtain medical health care, and her failure to complete a parenting class establish that Mother has failed to show by a preponderance of the evidence that she is presently fit and able to care for R.C. or that she will be fit and able to care for the child in the foreseeable future. See K.S.A. 2020 Supp. 38-2271(b).

In summary, Mother had over a year to work towards reintegration but made very little progress in addressing her drug addiction, obtaining stable income, and housing, or addressing her mental health needs. Of note, the district court did not assign much weight to Mother's last-minute efforts to progress in her case plan tasks in the month before the termination hearing.

Next, Mother's caseworker testified that even if Mother completed every case plan task and maintained her sobriety it would still take nine months to a year before reintegration was an option. "[A] child deserves to have some final resolution within a time frame that is appropriate from that child's sense of time." *In re A.A.*, 38 Kan. App. 2d 1100, 1105, 176 P.3d 237 (2008); see K.S.A. 2020 Supp. 38-2201(b)(4). R.C. has spent her entire life in state custody. Mother had multiple opportunities and over a year to address the unfitness problems and inadequacies that resulted in R.C. being in the care of DCF, but she did not begin completing the case plan requirements until shortly before the termination hearing. Mother has failed to show by a preponderance of the evidence that she is presently fit and able to care for R.C. or that she will be fit and able to care for the child in the foreseeable future. See K.S.A. 2020 Supp. 38-2271(b).

Finally, upon our review of the record we find no abuse of discretion by the district court in concluding that termination was in the best interests of the physical, mental, and emotional health of R.C. See K.S.A. 2020 Supp. 38-2269(g)(1); *In re R.S.*, 50 Kan. App. 2d 1105, Syl. ¶ 2, 336 P.3d 903 (2014).

Affirmed.